RENDERED: DECEMBER 14, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000204-DG
AND
2015-SC-000636-DG

SUPERIOR STEEL, INC., AND        APPELLANTS/CROSS-APPELLEES
BEN HUR CONSTRUCTION
COMPANY, INC.

ON REVIEW FROM COURT OF APPEALS

V.      CASE NOS. 2012-CA-000440-MR, 2012-CA-000441-MR,
2012-CA-000494-MR AND 2012-CA-000495-MR
KENTON CIRCUIT COURT NOS. 07-CI-03886
AND 08-CI-01309

THE ASCENT AT ROEBLING'S BRIDGE,      APPELLEES/CROSS-APPELLANTS
LLC.; CORPOREX DEVELOPMENT AND
CONSTRUCTION MANAGEMENT LLC;
DUGAN & MEYERS CONSTRUCTION
COMPANY AND WESTCHESTER FIRE
INSURANCE COMPANY

AND

2015-SC-000635-DG

DUGAN & MEYERS CONSTRUCTION        CROSS-APPELLANT
COMPANY

ON REVIEW FROM COURT OF APPEALS

V.      CASE NOS. 2012-CA-000440-MR, 2012-CA-000441-MR,
2012-CA-000494-MR AND 2012-CA-000495-MR
CIRCUIT COURT NOS. 07-CI-03886
AND 08-CI-01309

THE ASCENT AT ROEBLING'S BRIDGE,        CROSS-APPELLEES
LLC.; CORPOREX DEVELOPMENT AND
CONSTRUCTION MANAGEMENT LLC;
SUPERIOR STEEL, INC.; BEN HUR
CONSTRUCTION COMPANY, INC. AND
WESTCHESTER FIRE INSURANCE
COMPANY

**OPINION OF THE COURT BY JUSTICE HUGHES**

**AFFIRMING IN PART, REVERSING IN PART, AND REMANDING**

The Ascent at Roebling's Bridge (the "Project") is a 21-floor, luxury condominium building in downtown Covington, owned by Appellee/Cross-Appellant The Ascent at Roebling's Bridge, LLC ("Ascent") and developed by Appellee/Cross-Appellant Corporex Development and Construction Management LLC ("Corporex"). Corporex, the design builder, contracted with Appellee/Cross-Appellant Dugan & Meyers Construction Company ("D&M"), the construction manager and general contractor. D&M worked directly with subcontractors, including Appellant/Cross-Appellee Superior Steel, Inc. ("Superior"), the steel fabricator, and Appellant/Cross-Appellee Ben Hur Construction Company, Inc. ("Ben Hur"), the steel erector and installer. When new drawings led to extra work outside the scope of the original bid documents, Superior and Ben Hur proceeded with the work, but they were never paid for either that work or the retainage amount owed under Superior's contract with D&M. The two steel companies banded together as "the Steel Team" and brought suit against D&M, Ascent and Corporex.

After a fifteen-day jury trial, the Kenton Circuit Court entered judgment in favor of Superior and Ben Hur against D&M and Ascent for the cost of the extra work and the unpaid retainage as well as attorneys' fees incurred by Superior. D&M prevailed on its indemnification cross-claim against Corporex and Ascent and on the negligence cross-claim asserted against it by Corporex and Ascent. On appeal, the Court of Appeals reversed the judgment in its entirety, unwinding the majority of the trial court's rulings and returning the

2

record and applicable law, we affirm the judgment of the Court of Appeals in part, reverse in part, and remand for further proceedings consistent with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

In November 2005, Ascent hired Corporex to be the "design builder" for the Project.[1] Later, in March 2006, Corporex hired D&M, as the construction manager/general contractor for the Project. Corporex agreed to pay D&M a $2.2 million lump sum, a $975,000 contractor's fee (plus any participation in savings and a potential bonus), and a sum for the cost of the work as identified in the "Initial Estimate."

In July 2006, D&M solicited bids for the fabrication and erection of structural steel for the Project. The bid package that D&M supplied to potential subcontractors included architectural and structural drawings for the Project. Notably, those drawings did not include a forces table (a chart which identifies the forces acting upon each piece of steel to be used on the Project) or designs for the steel connections.

On August 4, 2006, D&M received three bids, including one from Superior, to be the subcontractor for the structural steel work. Subsequently, D&M contacted Superior and inquired whether the company would be willing to modify its bid proposal. As a cost saving measure, D&M wanted Superior to

---

[1] At the time of the Project and to this day, Ascent and Corporex exist as related entities. They are referred to hereafter as Ascent/Corporex except in reference to the Corporex/D&M contract, to which Ascent was not a party, and in other instances where a distinction is appropriate.

3

fabricate the steel for the project and have Ben Hur complete the erection and installation work. Prior to Superior submitting its modified bid, the Project's architect issued a revised set of drawings. Despite that fact, D&M instructed Superior to not acknowledge the revised drawings in making its bid; D&M wanted to be able to evaluate each of the bids it had received on an equal basis. Superior's modified bid was accepted by D&M in September 2006[2] and the parties' contract had a fixed price of $1,814,000. In turn, Superior contracted with Ben Hur to erect the steel and metal decking for $444,000. As structured, payment for all of the steel work flowed from Corporex to D&M and then from D&M to Superior. Superior would then pay Ben Hur what it was owed for erection and installation of the steel fabricated by Superior.

After Superior and Ben Hur were retained to work on the Project, further alterations were made to the structural design drawings issued by Ascent/Corporex. Corporex alerted D&M to the changes, and D&M in turn informed Superior and Ben Hur. Superior and Ben Hur expressed concern about the design changes as they would require additional work to be performed, work beyond the original scope of the contract.[3] In response, D&M separately directed both Superior and Ben Hur to perform the extra work, while keeping track of the time and costs.

---

[2] After D&M issued a letter of intent to award the steel and metal decking contract to Superior, Superior and Ben Hur began working on the Project. This work was done prior to finalizing the contract between D&M and Superior.

[3] The claimed value of the extra work performed by Ben Hur and Superior fluctuated prior to and during the course of the litigation in this case.

4

Prior to starting the additional work, Ben Hur's Vice President, Mark Douglas, sought the personal assurance of D&M's President, Jay Meyers, along with Corporex Vice-President Mike O'Donnell, that Ben Hur would be paid for the additional work. In a meeting with Meyers, Douglas was directed to proceed with the extra work, while tracking the time and costs. Meyers reassured Douglas that Ben Hur would not be cheated. On the day following the meeting, Dan Dugan of D&M drafted a letter to Superior acknowledging that additional work was necessitated due to changes to the design from the original bid documents and authorizing Superior to proceed with the additional work. That draft letter was forwarded to O'Donnell at Corporex, who directed Dugan not to send the letter.

Later, Ben Hur and Superior submitted work orders to D&M detailing the additional work done on the Project. In turn, D&M submitted those work orders to Corporex. While Ascent/Corporex did pay for some of the extra work performed, they failed to pay for additional work performed on the forces table/design load increase, the roof edge condition, and the roof tip. When Superior submitted its written change order for this extra work, Bill Butler, a principal at Ascent and Corporex, ordered O'Donnell, the Corporex vice-president, to address the claim at a later time. Eventually, Ascent/Corporex refused to provide any additional compensation to Ben Hur and Superior. As the basis for their refusal, Ascent/Corporex asserted that the amounts requested by Superior and Ben Hur were excessive and that those claims were due to D&M's mismanagement of the Project. Ultimately, in addition to not

5

being paid for additional work performed on the forces table/design load increase, the roof edge condition, and the roof tip, Superior also was not paid the $195,143.40 owed in retainage earned on the base contract work.[4]

After several months passed without payment, Superior and Ben Hur filed mechanics' liens on the Project to secure payment of the amounts owed. Subsequently, Ascent purchased lien discharge bonds from Westchester Fire Insurance Company ("Westchester") to remove the liens and enable Ascent to begin selling condominium units. In April 2008, Superior and Ben Hur filed this suit naming Ascent, Corporex, D&M, and Westchester as defendants. Superior and Ben Hur asserted claims against Ascent, Corporex, and D&M for breach of contract, unjust enrichment, breach of express and implied warranties, negligence, negligent misrepresentation, negligent supervision, and promissory estoppel. D&M then filed a crossclaim against Ascent/Corporex for breach of contract and indemnification for all monies owed to Superior and Ben Hur.[5] Ascent/Corporex also filed a crossclaim against D&M alleging breach of contract, negligent performance of contract, constructive fraud and indemnification.

At trial, D&M disputed whether a written contract with Superior had been agreed upon, and if so, which version of the contract would be enforced.

---

[4] Retainage is "[a] percentage of what a landowner pays a contractor, withheld until the construction has been satisfactorily completed and all mechanic's liens are released or have expired." BLACK'S LAW DICTIONARY (10th ed. 2014).

[5] Prior to trial, the trial court granted partial summary judgment in favor of Corporex on D&M's breach of contract claim for its own attorneys' fees and costs.

6

Further, while D&M and Ascent admitted at trial that Superior and Ben Hur had performed extra work, they asserted that the work was within the original scope of the contract. Additionally, D&M argued that the retainage was not owed due to Superior's alleged failure to comply with certain contract provisions.

After hearing all the evidence, the trial court directed a partial verdict in favor of Superior against Ascent and D&M, jointly and severally, for the unpaid retainage due under the contract, plus pre- and post-judgment interest. The trial court also concluded "as a matter of law that there was an implied contract between [D&M] and Ben Hur. That implied contract would allow Ben Hur to recover from [D&M] for work performed by it on the project if the work had been authorized by [D&M]." The remaining issues were submitted to the jury.

At the conclusion of the fifteen-day trial, the jury rendered its verdict in less than an hour. The jury's conclusions, each of which was unanimous, were as follows: 1) a contract existed between Superior and D&M (identified at trial as Joint Exhibit #226) to fabricate and erect the structural steel; 2) Superior and Ben Hur performed extra work; 3) the total value of Superior's extra work was $124,017.26; 4) the total value of Ben Hur's extra work was $284,295.53;

7

and 5) D&M did not fail to exercise ordinary care in the performance of its obligations under the construction management contract with Corporex.[6]

Subsequently, the trial court entered a final judgment consistent with the jury's verdict and the directed verdict on the retainage. In its judgment, the trial court rejected Superior and Ben Hur's trial claim that they were a unitary plaintiff, the so-called "Steel Team." The trial court determined that there was no legal basis for entering a judgment in favor of Superior and Ben Hur as a unit, but that the companies needed to be evaluated individually. Accordingly, the trial court awarded $124,017.26 in damages to Superior for the extra work it performed on the Project. The joint and several judgment was based on contract as to D&M and on unjust enrichment as to Ascent. Further, the trial court determined that $195,143.40 was due to Superior for the unpaid retainage under its contract with D&M. Again, the award against D&M was based on contract and the award against Ascent on unjust enrichment. As for Ben Hur, the trial court awarded $284,295.53 for the value of the extra work it performed on the Project. The joint and several judgment was premised on implied contract as to D&M and on unjust enrichment as to Ascent.

While both Superior and Ben Hur requested an award of attorneys' fees, expenses, and costs, the trial court determined that Superior was the only party entitled to this relief. Superior, as the prevailing party, was due an

---

[6] The instruction the trial court presented to the jury only concerned Ascent/Corporex's claim against D&M for negligence; the trial court declined to instruct the jury on Ascent/Corporex's breach of contract claim.

8

award of attorneys' fees, expenses, and costs in the amount of $349,241.70 under the terms of its contract with D&M. The trial court concluded that Ben Hur had no contractual right to an award of attorneys' fees and no other legal grounds for an award of attorneys' fees.

As to the dispute between D&M and Ascent/Corporex, the trial court concluded that Ascent/Corporex were jointly and severally liable to D&M for all sums D&M was mandated to pay to Superior and Ben Hur on their contract judgments (including attorneys' fees, costs, and expenses) by virtue of indemnification. Further, the trial court ordered that the judgments entered in favor of Superior and Ben Hur against D&M be stayed until Ascent/Corporex either 1) satisfied D&M's indemnity judgment or 2) satisfied Superior and Ben Hur's judgments for unjust enrichment.

All parties appealed the trial court's final judgment to the Kentucky Court of Appeals. The Court of Appeals vacated the judgment of the trial court in its entirety and remanded the case for a new trial. Dissatisfied with the rulings of the Court of Appeals, all parties sought and were granted discretionary review. The principal issues before us are:

1. Superior and Ben Hur's unjust enrichment claim against Ascent and Corporex. The Court of Appeals vacated the trial court's unjust enrichment award to Superior and Ben Hur, reasoning that the existence of contractual remedies barred an equitable remedy.

2. Superior's breach of contract claim against D&M. In vacating the judgment of the trial court, the Court of Appeals agreed with D&M that the jury

9

should have been explicitly instructed as to the "pay-if-paid" provisions in the D&M/Superior contract. Those provisions mandated that Superior was entitled to payment from D&M when D&M received payment from Corporex. In the appellate court's view, "[t]he jury should have been instructed to determine if D&M's obligation to pay Superior ever arose, and thus if D&M was in breach, or if D&M was not obligated to pay Superior Steel until it first received payment from Corporex, and thus it did not breach the contract."[7]

3. The attorneys' fee award to Superior. The vacating of the trial court's breach of contract judgment in favor of Superior on the D&M/Superior contract also resulted in the Court of Appeals reversing the award of prevailing party attorneys' fees and costs to Superior Steel from D&M.[8]

4. D&M's indemnification claims against Ascent/Corporex. The Court of Appeals vacated the portion of the trial court's order which held Ascent/Corporex were responsible to D&M under an indemnification theory for the

---

[7] Additionally, the Court of Appeals concluded that the trial court erred in permitting Ben Hur to recover against D&M for breach of an implied contract. Specifically, the Court of Appeals concluded that the determination of whether there was an implied contract between Ben Hur and D&M needed to be made by the jury, not the trial court. Given our disposition of this matter, we do not reach whether the trial court appropriately entered the implied contract judgment without presentation of the claim to the jury.

[8] A related issue concerning the attorneys' fees in this case was the Court of Appeals' determination that the trial court did not abuse its discretion in concluding that Ben Hur was not entitled to payment of its portion of attorneys' fees. The Court of Appeals agreed that as Ben Hur was not a party to the Superior/D&M contract and because there was no prevailing party provision in its contract with Superior, Ben Hur was not entitled to recover its attorneys' fees. Although the Court of Appeals found that the trial court did not abuse its discretion in deciding this issue, this portion of the trial court's order was vacated due to the appellate court's conclusion that a retrial of the case was necessary.

10

extra work and attorneys' fees awards. The appellate court held that D&M lacked a legal right to indemnification from Ascent/Corporex under either a contractual or common law theory.

5. Corporex's cross-claims against D&M. At trial, Corporex had raised cross-claims for breach of contract and negligence against D&M alleging that D&M failed to adequately oversee and manage the construction of the Project. However, the trial court decided to submit only the negligence claim to the jury, concluding that the claims were mutually exclusive. The Court of Appeals disagreed, determining that these were two separate and distinct claims and both should have been presented to the jury. Additionally, the Court of Appeals concluded that the trial court's negligence instruction was erroneous as it assumed Corporex was responsible for the disputed extra work.

## ANALYSIS

### I. The Court of Appeals Erred by Reversing the Trial Court's Judgment Against Ascent for Unjust Enrichment.

The trial court awarded Superior and Ben Hur judgment against Ascent under a claim for unjust enrichment for the extra work performed on the forces table/design load increase, the roof edge condition, and the roof tip as well as the unpaid retainage amount owed under Superior's contract with D&M. Ascent/Corporex maintain that the Court of Appeals properly reversed this judgment as the chain of contracts on this construction project,[9] including

_____

[9] To reiterate, Ascent/Corporex had a contract with D&M; D&M had a contract with Superior; and Superior had a contract with Ben Hur. These are the express contracts that are present in this case.

11

specifically the contract between Superior and D&M, bars any equitable claim for unjust enrichment. We disagree, and begin our analysis with unjust enrichment.

To recover on a claim of unjust enrichment a plaintiff is required to "prove the following three elements: '(1) benefit conferred upon defendant at plaintiff's expense; (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of [that] benefit without payment for its value.'" *Furlong Dev. Co. v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39-40 (Ky. 2016) (quoting *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009)). Because unjust enrichment is rooted in equity and "law trumps equity" *Bell v. Commonwealth*, 423 S.W.3d 742, 748 (Ky. 2014), courts frequently note that "unjust enrichment is unavailable when the terms of an express contract control." *Furlong Dev. Co.*, 504 S.W.3d at 40 (citing *Sparks Milling Co. v. Powell*, 283 Ky. 669, 143 S.W.2d 75, 76 (Ky. 1940); and *Bates v. Starkey*, 212 Ky. 347, 279 S.W. 348, 350 (Ky. 1926)). A leading Court of Appeals decision, *Codell Constr. Co. v. Commonwealth*, 566 S.W.2d 161 (Ky. App. 1977), illustrates this basic principle.

In *Codell*, a road contractor won a bid to complete a construction project for the Highway Department. *Id.* at 163. In making its bid, the contractor relied upon information provided by the Highway Department concerning the amount of rock to be excavated as part of the project. Significantly, the contract between the contractor and the Highway Department included an express disclaimer regarding the accuracy of this information. After starting

12

work on the project, the contractor determined that additional work was necessary and requested additional compensation. *Id.* The Highway Department refused to pay more than the contract amount, and the contractor initiated a lawsuit. Following the circuit court's grant of summary judgment for the Highway Department, the Court of Appeals affirmed. After explaining that the disclaimer precluded extra compensation under the contract, the Court of Appeals stated that "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Id.* at 165 (citing *Ashton Contractors & Eng'rs, Inc. v. State* 454 P.2d 1004 (Ariz. 1969)). In the appellate court's view, the contractor had entered into a bad bargain and the court had no "basis to salvage the operation." *Id.*

In the case at bar, the jury determined that the relationship between D&M and Superior was governed by contract. Accordingly, had the trial court permitted Superior to recover against D&M under a claim of unjust enrichment, long-standing precedent makes clear that judgment would not be sustained by this Court. Ascent/Corporex maintain that the same result applies to them even though they have no contractual relationship with either Superior or Ben Hur because the controlling legal principle is that where a party has an "adequate legal remedy available" it bars unjust enrichment entirely regardless of whether the party against whom unjust enrichment is sought is the same party against whom the legal remedy lies. We largely agree with Ascent/Corporex's statement of the general principle but reject the

13

conclusion that its application precludes an unjust enrichment award in this case.

As Ascent/Corporex acknowledge, their desired outcome is premised on Superior and Ben Hur having an adequate remedy elsewhere, and in fact they have no such remedy. In short, they do not have a viable contractual remedy against D&M because Ascent/Corporex have not paid D&M for the extra steel work, relieving D&M of any immediate obligation to pay Superior (and consequently Superior paying Ben Hur) for the work performed for Ascent/ Corporex's benefit.[10] As explained more fully below, the D&M/Superior contract contains "pay-if-paid" provisions wherein D&M's obligation to pay Superior is premised on having first received payment from "the Owner," i.e., Ascent/Corporex. Additionally, the D&M/Superior contract, the form of which Corporex had authority to approve under Section 3.8 of the Corporex/ D&M contract, specifically states: "The Subcontractor [Superior] hereby acknowledges that it relies on the credit of the Owner [Ascent/Corporex], not the Contractor [D&M] for payment of Subcontract Work." So there is a "chain of contracts" as Ascent/Corporex repeatedly note but there is also undeniable "contractual gridlock" that traces back to Ascent/Corporex's failure to pay for

---

[10] As repeatedly noted, Ben Hur had no contract with D&M although D&M was responsible for Superior and Ben Hur working together on the Project, having asked Superior to revise its bid so that Superior would fabricate the steel and Ben Hur would erect and install. Ben Hur had a contract with Superior which in turn had the steel contract with D&M.

14

work received. Unless and until Ascent/Corporex pay D&M, Superior has no real contractual remedy.

The tendency of courts and litigants to disfavor unjust enrichment claims when contracts abound, as in construction disputes such as this one, is fairly commonplace but as the drafters of the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT aptly state:

> Judicial statements to the effect that "there can be no unjust enrichment in contract cases" can be misleading if taken casually. Restitution claims of great practical significance arise in a contractual context, but they occur at the margins, when a valuable performance has been rendered under a contract that is invalid, or subject to avoidance, or otherwise ineffective to regulate the parties' obligations. *Applied to any such circumstance, the statement that there can be no unjust enrichment in contract cases is plainly erroneous.*

*Id.* at § 2, cmt. c (2011) (emphasis supplied). As Superior and Ben Hur note, the RESTATEMENT specifically addresses the situation where a party is uncompensated under a contract with a third party for a performance that ultimately benefits the defendant, the scenario presented here.

> If the claimant renders to a third person a contractual performance for which the claimant does not receive the promised compensation, and the effect of the claimant's uncompensated performance is to confer a benefit on the defendant, the claimant is entitled to restitution from the defendant as necessary to prevent unjust enrichment.

*Id.* at § 25(1). ("Uncompensated Performance Under Contract with Third Person"). Here, Superior and Ben Hur indisputedly rendered a contractual

15

performance to D&M, conferring a substantial benefit on Ascent/Corporex, for which Superior and Ben Hur have never been paid.[11]

Courts in other jurisdictions have not hesitated to allow subcontractors to recover from property owners that receive the benefit of their work provided that the owner has not already paid the general contractor for the exact same work. Thus, in *Nation Elec. Contracting, LLC v St. Dimitrie Romanian Orthodox Church*, 74 A.3d 474, 481 (Conn. App. 2013), an electrical contractor recovered judgment on an unjust enrichment theory against a church that had received the benefit of extra electrical work beyond the scope of the original contract but never paid the contractor or subcontractor for it. Similarly, in *Zaleznik v. Gulf Coast Roofing Co.*, 576 So.2d 776, 778-79 (Fla. App. 1991), three subcontractors recovered judgments against a homeowner for unjust enrichment based on the work they performed for which the homeowner had never paid the contractor or the subcontractors.

Ascent/Corporex cite competing authority including several cases addressing New York law, which limits a subcontractor to its contractual recovery against the contractor and precludes recovery against the owner unless the owner expressly agreed to be held liable to the subcontractor. *See, e.g., A&V 425 LLC Contracting Co. v. RFD 55th St. LLC*, 15 Misc.3d 196, 830 N.Y.S.2d 637 (N.Y. Sup. Ct. 2007). Kentucky has no such rule. Nor do we

---

[11] In its brief, D&M candidly states: "Corporex refused to pay for the extra work, giving Superior Steel no choice but to initiate litigation to recover its extras and Dugan & Meyers no choice but to defend and seek recovery of those extras from Corporex and The Ascent."

16

have case law that allows unjust enrichment recovery against the owner only where the contractor with whom the subcontractor contracted is insolvent or judgment proof, the rationale that Ascent/Corporex offer for cases such as *Zaleznik*.

Ascent/Corporex argue that an insolvent contractor is also the reason our Court of Appeals approved a potential unjust enrichment recovery by a subcontractor against a property owner in *Dirt & Rock Rentals, Inc. v. Irwin & Powell Constr., Inc.,* 838 S.W.2d 412, 414 (Ky. App. 1992), but the opinion makes no reference to the solvency of the contractor. In that case, subcontractor Dirt & Rock Rentals, a heavy equipment lessor, was not paid by the contractor, a joint venture that included Irwin and Powell Construction, for heavy equipment it had leased and used in developing a residential subdivision for HFH, Inc. The Court of Appeals concluded that the subcontractor could not recover against HFH, the property owner, unless "the enrichment to HFH is unjust." *Id.* Finding issues of fact, the court reversed a summary judgment in favor of HFH and remanded for further proceedings to determine whether HFH had ever paid the joint venture/contractor for the machinery and equipment that the subcontractor had provided pursuant to a lease with the contractor. The clear import was that an unjust enrichment award to the subcontractor was proper if HFH had never paid the contractor.

Similarly, in *Brock v. Pilot Corp.*, 234 S.W.3d 381, 384 (Ky. App. 2007), the Court of Appeals recognized that an unpaid sub-subcontractor who provided work that enhanced property could have an unjust enrichment claim

17

against the landowner. "To recover pursuant to the equitable theory of unjust enrichment, Brock [the unpaid sub-subcontractor] must demonstrate that Pilot [the landowner] not only benefited from his efforts but also that Pilot did not pay any person for the work Brock performed." *Id.*, (citing *Dirt & Rock Rentals Inc.*, 838 S.W.2d at 412). Because the record reflected that the general contractor was fully paid for all the work performed, including the hauling and excavating work performed by sub-subcontractor Brock, the claim failed as a matter of law. Nevertheless, the potential for an unjust enrichment recovery against the landowner was clearly acknowledged.

Most recently, in *Brown Sprinkler Corp. v. Somerset-Pulaski Cty. Dev. Found, Inc.*, 335 S.W.3d 455 (Ky. App. 2010), the Court of Appeals rejected the argument that a legal remedy via a mechanics' lien precluded an unjust enrichment claim. In that case, the Somerset-Pulaski County Development Foundation, Inc. (Foundation) entered into a contract with Cecil Saydah Company (CSC), a California company, to lease a property to be used as a manufacturing company. *Id.* at 456. Subsequently, CSC contracted with Brown Sprinkler Corporation (Brown) to install a sprinkler system in the building but eventually CSC went bankrupt and abandoned the property without paying Brown any portion of the contract price. Per the terms of CSC's contract with the Foundation, "any improvements made would become the property of the Foundation as an integral part of, and not to be separate from, the land." *Id.* After Brown unsuccessfully filed a lien against the Foundation's

18

property to secure payment,[12] *id.* at 456-57, it brought suit against the Foundation, arguing the landowner had been unjustly enriched. *Id.* at 457. The circuit court granted the Foundation summary judgment based on the premise that an adequate legal remedy—the mechanics' lien statute—barred Brown from seeking the equitable remedy of unjust enrichment. *Id.*

The Court of Appeals reversed, observing that the mechanics' lien statute "does not specifically state that a mechanics' lien is the only course of action to be taken by those seeking relief" and no other language in the statute suggested the legislature sought to create an exclusive remedy. *Id.* at 457-58. Relying on *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371 (W.D. Ky. 1987), the Court of Appeals determined that "Brown's failure to properly file a mechanics' lien . . . does not preclude it from attempting to recover under a theory of unjust enrichment." *Id.* at 458. The Court of Appeals thus expressly rejected the idea that a legal remedy by statute precluded resort to equitable remedies such as quantum meruit and unjust enrichment, and, in so doing, tacitly rejected the contract argument advanced by Ascent/Corporex in the case at bar.

We are not bound by these appellate court decisions but we find them representative of Kentucky courts' willingness to adopt equitable measures where appropriate and wholly consistent with the principles in the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT discussed *supra.*

---

[12] The lien was unsuccessful, due to Brown listing the Foundation's actual address rather than the address of the subject property. *Id.* at 457, n.4.

19

The factors supporting invocation of equity in this case are numerous but we first reemphasize that legal remedies, where available and adequate, apply first. The legal remedy proffered by Ascent/Corporex is Superior's contractual remedy against D&M but, as noted and explained below, Ascent/Corporex's failure to pay D&M is a continuing impediment to the actual realization of that contractual remedy. Contractual gridlock persists and no remedy was forthcoming under the parties' contracts. To the extent they cite contract provisions regarding change order requirements and necessary applications for payment by D&M and/or Superior as excuses for non-payment, Ascent/Corporex ignore their own role in failing to act on the requested change orders and their assurances that both Superior and Ben Hur would be paid, as well as the adverse effect a final application for payment (at least by Superior) could have on its claims for extra work beyond the scope of the original drawings and contract. Moreover, Ascent/Corporex through the Corporex/ D&M contract had the right to approve all subcontractor contracts, including specifically the form and contents. (The Corporex/D&M "Construction Agreement" was an exhibit to the "Standard Form Agreement" between D&M and Superior.)[13] In addition to the "pay-if-paid" language, the Standard Form Agreement (the D&M/Superior contract) specifically stated that Superior was "rel[ying] on the credit of the Owner, not the Contractor, for payment of

---

[13] To the extent Ascent/Corporex claim they had not seen or approved the D&M/Superior contract, that omission was not Superior's responsibility and, in any event, Ascent/Corporex were well aware that Superior was providing the steel work pursuant to a subcontract that Ascent/Corporex had the right to approve.

20

Subcontract Work." While any recipient of a substantial benefit in the form of authorized extra work should not be surprised that payment will be due, eventually, the D&M/Superior contract underscores that Superior was ultimately relying on Ascent/Corporex for payment. Finally, Ascent/Corporex do not contest (at least post-trial) that additional work was performed by Superior and Ben Hur and that some amount of compensation is due.[14] Under these circumstances, we conclude that unjust enrichment is an entirely appropriate equitable remedy and the trial court did not err in so ruling.

Lastly, Ascent/Corporex contend that the trial court failed to properly instruct the jury on unjust enrichment. They allege that the trial court's instruction was flawed in that the extra work instructions, only referenced D&M and Superior by name, and did not name or acknowledge Ben Hur, Ascent, and Corporex. Ascent/Corporex further note that the trial court's instruction for extra work does not include the phrase "unjust enrichment."

Equitable claims, such as unjust enrichment, are heard and decided by the trial court, not the jury. *Steelvest, Inc. v. Scansteel Serv. Ctr, Inc.,* 908 S.W.2d 104, 108 (Ky. 1995) ("causes of action historically legal are triable by jury and causes of action historically equitable are triable by the court"); *Emerson v. Emerson,* 709 S.W.2d 853, 855 (Ky. App. 1986) (jury verdict in

---

[14] The video record of a November 3, 2011, post-trial hearing reflects counsel for Ascent and Corporex stating: "[W]e're not trying to dodge the bullet here. We are not trying to weasel out of this, and that's why the appropriate remedy here is unjust enrichment award against the owner[.]" While such admission does not factor into our legal analysis, it further establishes that this outcome can come as no surprise to Ascent and Corporex.

21

unjust enrichment case was advisory only because the remedy is "equitable in nature" and trial court must make the necessary findings of fact and conclusions of law although it may choose to adopt jury's findings). Admittedly, there may be factual issues that are capable of jury determination before application of an equitable remedy, but there is no entitlement to a jury trial on an unjust enrichment claim. *See Steelvest, Inc.*, 908 S.W.2d at 107-09. That said, we look at the challenged instructions, recognizing that the jury's findings were relied upon by the trial court in crafting its unjust enrichment remedy.

When reviewing the content of a trial court's jury instructions, this Court engages in *de novo* review. *Sargent v. Shaffer*, 467 S.W.3d 198, 204 (Ky. 2015). Having examined the trial court's jury instruction concerning the extra work performed by Superior and Ben Hur, we find that that the instruction was proper, for purposes of both the asserted contract claim and determining the amount, if any, of unjust enrichment. The only factual question regarding Superior and Ben Hur's claim for unjust enrichment was whether the work on the forces table/design load increase, the roof edge condition, and the roof tip fell within the scope of the original contract between Superior and D&M. Accordingly, the trial court properly drafted its instruction to focus the jury on whether that effort was covered under the scope of the original contract or whether it should be deemed extra work. In the interrogatories accompanying the trial court's instruction for extra work, the jury was asked if extra work had been performed by Superior or Ben Hur and the value of that work. After

22

weighing the evidence, the jury unanimously concluded that Superior and Ben Hur did perform extra work on the forces table/design load increase, the roof edge condition, and the roof tip.

Contrary to Ascent/Corporex's argument, there was no need for the trial court to identify in its instruction that the extra work was done for the benefit of Ascent/Corporex, a fact that was never disputed. While Ascent/Corporex disagreed with Superior and Ben Hur about whether the extra work was covered by the contract and the value of that work, they never disputed that they are the parties who received the benefit of it. *See Furlong Dev. Co.*, 504 S.W.3d at 39-40) (second element of unjust enrichment claim is "a resulting appreciation of benefit by defendant"). Nor, can Ascent/Corporex deny that they never paid Superior, Ben Hur, or D&M for that extra work. *See id.* (third element of unjust enrichment claim is "inequitable retention of benefit without payment for its value").

Given the jury's findings and the undisputed facts in the case, the trial court properly evaluated the legal consequences of all parties' actions and applied an equitable remedy—unjust enrichment. As such, we conclude that the Court of Appeals erred by reversing the trial court's judgment against Ascent for unjust enrichment, and reinstate that portion of the trial court's judgment.

23

## II. The Court of Appeals Properly Reversed the Trial Court's Judgment Against D&M for Breach of Contract

Superior and Ben Hur[15] contend that the Court of Appeals erred by vacating the portion of the trial court's judgment concerning their claims against D&M for breach of contract. The Court of Appeals determined that the jury should have been instructed as to the "pay-if-paid" provisions of the contract between Superior and D&M. According to the Court of Appeals, "[t]he jury should have been instructed to determine if D&M's obligation to pay Superior Steel ever arose, and thus if D&M was in breach, or if D&M was not obligated to pay Superior Steel until it first received payment from Corporex, and thus it did not breach the contract." Superior and Ben Hur argue that this reasoning is erroneous, as the interpretation of a contract is a legal issue for the court's consideration, not the jury's.

In evaluating Superior and Ben Hur's claims for breach of contract against D&M we begin by examining the instrument that governed their relationship. "The interpretation of a contract, including determining whether a contract is ambiguous, is a question of law for the courts and is subject to *de novo* review." *3D Enters. Contracting Corp. v. Louisville & Jefferson Cty. Metro. Sewer Dist.*, 174 S.W.3d 440, 448 (Ky. 2005) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002); *see also Giddings & Lewis, Inc. v. Indus. Risk Insurers*, 348 S.W.3d 729, 742 (Ky. 2011) ("Contract

---

[15] Again, Ben Hur was not a party to the D&M/Superior contract but derived payment through that contract, as D&M was aware having "paired" Superior and Ben Hur to provide the steel work on the Project.

24

construction is a matter of law and thus an issue for the trial court, not a jury, to determine.") (citing *Morganfield Nat'l Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky. 1992)).

"In the absence of ambiguity, a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Kentucky Shakespeare Festival, Inc. v. Dunaway*, 490 S.W.3d 691, 694 (Ky. 2016) (quoting *Wehr Constructors, Inc. v. Assurance Co. of America*, 384 S.W.3d 680, 687 (Ky. 2012)). Courts will find that a contract is ambiguous where "a reasonable person would find it susceptible to different or inconsistent interpretations." *Id.* at 694-95 (quoting *Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010)).

If there is no ambiguity in the contract, a reviewing court must determine the intention of the parties "from the four corners of that instrument." *Hoheimer v. Hoheimer*, 30 S.W.3d 176, 178 (Ky. 2000)). Further, "'[i]n the absence of ambiguity a written instrument will be enforced strictly according to its terms,' and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." *Hazard Coal Corp.*, 325 S.W.3d at 298 (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)). The fact that a party may have intended different results is inadequate to "construe a contract at variance with its plain and unambiguous terms." *3D Enters. Contracting Corp.*, 174 S.W.3d at 448 (quoting *Cantrell*, 94 S.W.3d at 385).

25

Here, the jury was asked to determine whether D&M and Superior ever agreed to a written contract and which of two different exhibits introduced at trial was the final contract. Joint Exhibit 226 was designated by the jury as the final contract. At the center of the contract dispute between D&M and Superior is the language prescribing payment, a so-called "pay-if-paid" clause, which conditions D&M's payment of Superior on D&M having first been paid by Ascent/Corporex. Although neither this Court nor the Court of Appeals has previously addressed a "pay-if-paid" clause, they are not uncommon.

Given the increasingly complex nature of construction projects, contractors and subcontractors have developed mechanisms to address the possibility that an "upstream" contracting party will become insolvent or otherwise default, prompting the question of which of the "downstream" parties will bear the risk of nonpayment. *BMD Contractors, Inc. v. Fid. & Deposit Co.*, 679 F.3d 643, 648 (7th Cir. 2012). One type of contractual provision designed to address this risk is a "pay-if-paid" clause. "Pay-if-paid conditions shift the risk of nonpayment from the contractor to the subcontractor by requiring the subcontractor to wait for payment until the contractor has been paid." *Eagle Supply & Mfg., L.P. v. Bechtel Jacobs Co. LLC*, 868 F.3d 423, 436 (6th Cir. 2017) (citing *Thos. J. Dyer Co. v. Bishop Int'l Eng'g Co.*, 303 F.2d 655, 661 (6th Cir. 1962)); *see also Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 179 (3d Cir. 2011) ("In construction contract parlance, [a 'pay-if-paid clause'] means that a subcontractor gets paid by the general contractor only if the owner pays the general contractor for that subcontractor's work.")

26

"A typical 'pay-if-paid' clause might read: 'Contractor's receipt of payment from the owner is a condition precedent to contractor's obligation to make payment to the subcontractor; the subcontractor expressly assumes the risk of the owner's nonpayment and the subcontract price includes this risk.'" *MidAmerica Constr. Mgmt., Inc. v. MasTec North America, Inc.*, 436 F.3d 1257, 1261-62 (10th Cir. 2006) (quoting Robert F. Carney & Adam Cizek, *Payment Provisions in Construction Contracts and Construction Trust Fund Statutes: A Fifty-State Survey*, 24 Construction Law, 5-6 (2004)). Courts generally predicate their enforcement of a "pay-if-paid" clause on its language being clear and unequivocal. *Id.* at 1262. *See e.g., Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc.*, 62 So.3d 1020, 1027-28 (Ala. 2010) (because "plain and unambiguous" "pay-if-paid" provision of contract had not been satisfied, general contractor had no obligation to make final payment to subcontractor); *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 16 N.E.3d 645, 647 (Ohio 2014) (express "condition precedent" language established a "pay-if-paid" provision transferring the risk of non-payment from the general contractor to the subcontractor).

The contract between Superior and D&M contains two sections which are germane to this discussion. First, Article 7.11, "Claims Payment", states:

> [n]o additional compensation shall be paid by the Contractor to the Subcontractor for any claim arising out of the performance of this Subcontract, unless the Contractor has collected corresponding additional compensation from the owner, or other party involved, or unless by written agreement from the Contractor to the Subcontractor prior to the execution of the Work performed under

27

said claim, which agreement and work order must be signed by an officer of the Contractor.

Second, Article 8.2.5, "Time of Payment" reads in relevant part: "[r]eceipt of payment by the Contractor from the Owner for the Subcontract Work is a condition precedent to payment by the Contractor to the Subcontractor. The subcontractor hereby acknowledges that it relies on the credit of the Owner, not the Contractor for payment of Subcontract Work."[16]

These contract provisions are not ambiguous. They clearly provide that D&M's receipt of payment is a "condition precedent" to its obligation to pay Superior. "'Condition precedent' is a legal term of art with a clear meaning: 'An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" *BMD Contractors, Inc.*, 679 F.3d at 650 (citing BLACK'S LAW DICTIONARY 334 (9th ed. 2009). This "pay-if-paid" language, coupled with the express use of "condition precedent," unequivocally allocates the risk of nonpayment by the Project owner to Superior and relieves D&M of the obligation to pay until it receives payment from Ascent/Corporex for the steel work performed. It is undisputed that Ascent/Corporex never paid D&M for the retainage or the disputed extra work.

Superior does not contest the existence of a "pay-if-paid" clause, but argues instead that if the clause "cannot be harmonized with the rest of the

_____

[16] Article 11.4, "Multiparty Proceeding", reinforces the D&M-must-be-paid-first concept in the event of a dispute: "In no event shall the Subcontractor be entitled to damages, or compensation in excess of that received by the Contractor from the Owner arising out of the claim or complaint filed by the Subcontractor." We reject Superior and Ben Hur's argument that once a dispute arises, the pay-if-paid provisions no longer apply.

28

contract in a manner which supports the [trial] court's judgment, this Court should hold that the 'pay-if-paid' terms are unenforceable as a matter of public policy." California and New York are two jurisdictions which have concluded that pay-if-paid clauses are unenforceable as contrary to public policy due to their impact on mechanic's lien rights. *Wm. R. Clarke Corp. v. Safeco Ins. Co.*, 938 P.2d 372, 374 (Cal. 1997); *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 661 N.E.2d 967, 968 (N.Y. 1995).

However, the decisions of California and New York's highest courts appear to be outliers nationwide. While "pay-if-paid" clauses have fallen out of favor in some states, the prohibition against their use has come from the legislature rather than the courts. *See e.g.* N.C. Gen. Stat. § 22C-2 (West, Westlaw through 2016-2017 Legis. Sess.);[17] Wis. Stat. § 779.135 (West, Westlaw through 2017 Act 60). Further, several courts have rejected the public policy argument advanced by Superior. *See e.g., Wellington Power Corp. v. CNA Sur. Corp.*, 614 S.E.2d 680, 685-86 (W.Va. 2005) ("pay-if-paid" condition precedent clause of contract in a public construction project did not violate the public policy set forth in West Virginia's public bond statute); *BMD Contractors, Inc.*, 679 F.3d at 652-53 ("easily reject[ing]" public policy challenge to "pay-if-

---

[17] The North Carolina statute states: "Performance by a subcontractor in accordance with the provisions of its contract shall entitle it to payment from the party with whom it contracts. Payment by the owner to a contractor is not a condition precedent for payment to a subcontractor and payment by a contractor to a subcontractor is not a condition precedent for payment to any other subcontractor, and *an agreement to the contrary is unenforceable.*" (emphasis supplied).

29

paid" clause given Indiana's "strong background presumption favoring freedom of contract").

After considering the various approaches of our sister states, we decline to hold that "pay-if-paid" terms are unenforceable as a matter of public policy. Kentucky, like Indiana, has long respected freedom of contract and allowed parties to allocate among themselves the foreseeable risks. *See Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644 (Ky. 2007); *see also Zeitz v. Foley*, 264 S.W.2d 267, 268 (Ky. 1954) (explaining that contracts should not "be set aside lightly" given that "right of private contract is no small part of the liberty of the citizen[.]"). While there are valid policy reasons for disfavoring "pay-if-paid" provisions, any prohibition against this type of contract clause should come from the legislature rather than from this Court.[18]

While the "pay-if-paid" provisions excuse D&M from having to pay until it has received payment from Ascent/Corporex and require the conclusion that D&M has not breached the contract, they in no way precluded Superior from bringing a breach of contract action. There was a dispute between the parties as to which document actually constitutes the D&M/Superior contract and a dispute about whether specific work attributable to the forces table/design load, the roof edge condition and the roof tip was extra work or within the scope of the original contract. Without initiating a breach of contract claim,

---

[18] We also reject Superior's argument that the provisions of Article 11 invalidate the "pay-if-paid" clauses of the contract. Article 11, which identifies the process for multi-party proceedings, allows Superior to pursue a claim against D&M for unpaid work but it does not nullify the "pay-if-paid" clauses of the contract. See fn. 15 *supra.*

Superior had no resolution of those issues. Post-suit it has a jury determination regarding the specific document that constitutes the parties' contract and a unanimous jury verdict establishing that it has met its evidentiary burden of proving that the disputed work was indeed "extra work" and that it was performed at the behest of D&M. Prior to initiating a breach of contract suit, Superior had no sworn testimony unequivocally establishing that D&M had never been paid by Ascent/Corporex for the retainage and the disputed work. While there is no suggestion in the record that D&M was ever less than honest and forthcoming regarding its payment status *vis-à-vis* Ascent/Corporex, there are unscrupulous general contractors who do not deal honestly and forthrightly with their subcontractors, retaining funds from the owner intended for the subcontractor. A breach action provides a definitive answer. As for one of Ascent/Corporex's defenses to the breach action, the "pay-if-paid" provisions, this Court has declined the invitation to invalidate them on public policy grounds but Superior had a credible argument that it presented in the context of its breach of contract claim. If the public policy argument had been successful, the breach of contract judgment could be sustained. Finally, and perhaps most importantly from Superior and Ben Hur's standpoint, only by pursuing this unavailing legal remedy could it fully establish the facts underlying this dispute and its eventual entitlement to an unjust enrichment recovery from Ascent/Corporex. So, while the "pay-if-paid" provisions preclude a breach of contract judgment in favor of Superior they did not preclude Superior from pursuing the contract claim.

31

## III. The Attorneys' Fees Award to Superior is Not Sustainable.

We turn next to the trial court's award of attorneys' fees to Superior. The basis for the trial court's award was its reading of Article 11.6, "Cost of Dispute Resolution", a provision in the D&M/Superior contract. Article 11.6 reads in pertinent part:

> The prevailing party in any dispute arising out of or relating to this Agreement or its breach that is resolved by a dispute resolution procedure designated in the Subcontract Documents shall be entitled to recover from the other party reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute resolution process.

With this provision, the trial court determined that by succeeding on its breach of contract claim against D&M, Superior was entitled to an award of attorneys' fees and expenses. As for Ben Hur, which the trial court held had an implied rather than express contract with D&M, the court concluded that it had no contractual right to attorneys' fees and the court could not find "compelling legal precedent to support such an award on equitable grounds." Of course, our conclusion that Superior's breach of contract judgment must be reversed raises the threshold issue of whether an attorneys' fee award is sustainable at all.

"Generally, Kentucky courts apply the so-called American Rule regarding attorney's fees. That rule requires parties to pay their own fees and costs and does not allow, as in the English courts, for the shifting of the prevailing party's fees to the loser." *Rumpel v. Rumpel*, 438 S.W.3d 354, 360 (Ky. 2014) (citing *Bell v. Commonwealth*, 423 S.W.3d 742 (Ky. 2014); *AIK Selective Self-Insurance Fund v. Minton*, 192 S.W.3d 415 (Ky. 2006)). However, one exception to this

general rule, is where the parties have agreed through a specific contractual provision to allow for recovery of attorneys' fees. *Aetna Cas. & Surety Co. v. Commonwealth*, 179 S.W.3d 830, 842 (Ky. 2005) (*citing Nucor Corp. v. General Elec. Co.* 812 S.W.2d 136 (Ky. 1991)). An award of attorneys' fees is within the sound discretion of the trial court and will not be disturbed "[a]bsent a showing of an abuse of that discretion." *Woodall v. Grange Mut. Cas. Co.*, 648, S.W.2d 871, 873 (Ky. 1983). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000) (*citing Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

As noted, interpretation of contract language is a matter of law and our review is *de novo* but in this case the reversal of Superior's breach of contract judgment against D&M renders our analysis of Article 11.6 quite different from that engaged in by the trial court. Had the breach of contract judgment against D&M been sustainable, the trial court's award of attorney's fee was certainly authorized by Article 11.6 and the specific award crafted was not an abuse of discretion. Without the underpinning of a contract judgment, however, Article 11.6 is necessarily read in a different light. The initial reference in Article 11.6 to "the prevailing party in any dispute arising out of or relating to this Agreement or its breach" is arguably broad enough to encompass Superior because although it did not prevail on a breach claim it did prevail in what the contract refers to as a "multiparty proceeding." Article 11.4 is so entitled and provides in relevant part:

33

11.4 MULTIPARTY PROCEEDING The parties agree that to the extent permitted by Subcontract Document all parties necessary to resolve a claim shall be parties to the same dispute resolution proceeding. To the extent disputes between the Contractor and Subcontractor involve in whole or in part disputes between the Contractor and the Owner, disputes between the Subcontractor and the Contractor shall be decided by the same tribunal and in the same forum as disputes between the Contractor and the Owner. In no event shall the Subcontractor be entitled to damages, or compensation in excess of that received by the Contractor from the Owner arising out of the claim or complaint filed by the Subcontractor.

The multiparty proceeding eventually became a multiparty lawsuit and Superior (and Ben Hur) finally prevailed on the substantive claim at the center of the dispute—the extra work—*albeit* not through a contract claim. While the initial language in Article 11.6 is probably broad enough to allow recovery of attorneys' fees even where the party prevails through a non-contract claim, *i.e.,* unjust enrichment, the problem arises with the closing language of that section that reads "shall be entitled to recover from *the other party* reasonable attorneys' fees, costs and expenses incurred by the prevailing party in connection with such dispute process." (emphasis supplied). Ascent/Corporex were not parties to the D&M/Superior contract and so are not bound by the attorneys' fees provision; they cannot be "the other party" as that language is used in Article 11.6. And while Superior prevailed overall, so to speak, it did not prevail as to D&M. Indeed, D&M is correct that given the pay-if-paid language D&M was not in breach of the contract even though Superior and Ben Hur had rendered the requested performance of extra steel work and had never been compensated for it. If Superior had prevailed as to D&M on any

34

theory, Article 11.6 was arguably broad enough to allow attorneys' fees but the victory achieved was against Ascent/Corporex and the D&M/Superior contract does not provide a basis for an award of any attorneys' fees against D&M under those circumstances. For that reason, the trial court's judgment awarding such fees is reversed.[19]

## IV. The Court of Appeals Correctly Determined that the Trial Court Should Have Instructed the Jury on Ascent and Corporex's Claim for Breach of Contract Against D&M But Erred in Finding the Negligence Instruction Deficient

D&M contends that the Court of Appeals erred by vacating the trial court's judgment and remanding the case for a new trial on Ascent/Corporex's breach of contract and negligence claims against D&M. We agree with the Court of Appeals that the trial court should have instructed the jury on Ascent/Corporex's breach of contract claim and begin with that claim before turning to the more problematic negligence claim.

Ascent/Corporex's cross-claim against D&M included a claim for "Breach of Contract", alleging among other things that D&M (1) failed to advise them that Superior's proposal was not based on the revised drawings which featured the completed forces table; (2) failed to advise them of the "erector's qualification" in Superior's proposal; (3) failed to timely and properly monitor change requests made by Superior and Ben Hur (4) failed to timely and properly monitor the performance of the alleged extra work; and (5) failed to

---

[19] The reversal of the breach of contract judgment and the attorney's fee award renders irrelevant the indemnification of D&M by Ascent/Corporex, identified as issue no. 4 *supra*.

timely award a contract for the window washing system on the Project resulting in additional costs.

Ascent/Corporex also asserted a "Negligent Performance of Contract" claim against D&M, a claim which largely mirrored the contract breach allegations. First, they alleged D&M breached its duty to perform its work "in a reasonably prudent and careful manner and in a manner consistent with industry standards." As part of this claim Ascent/Corporex contended that D&M (1) failed to disclose material information related to Superior's bid; (2) failed to ensure that the bid was based on the revised plans and forces table; (3) failed to advise of the "erector's qualification" in Superior's contract; (4) negligently directed Superior not to consider the revised plans in preparing its proposal; (5) failed to carefully manage the Pro-Bel subcontract; and (6) failed to manage the steel claim in a manner that would have accurately assessed the extra work performed by Ben Hur, if any.[20]

The trial court ultimately concluded that both claims could not be presented to the jury. While discussing jury instructions, D&M argued that the jury should be instructed on Ascent/Corporex's breach of contract claim rather than its negligent performance claim. Ascent/Corporex wanted both claims presented to the jury but the trial court ultimately disagreed and instructed the

---

[20] The cross-claim also included a claim for "Constructive Fraud" and a claim for "Indemnification" of Ascent and Corporex by D&M. Neither of those claims is before the Court.

jury only as to Ascent/Corporex's negligence claim against D&M. As noted, the jury found in favor of D&M.

The trial court's decision on whether to instruct the jury on a specific claim is reviewed for abuse of discretion. *Sargent*, 467 S.W.3d at 203-04. As often stated, "the trial court must instruct the jury upon every theory reasonably supported by the evidence. 'Each party to an action is entitled to an instruction upon his theory of the case if there is evidence to sustain it.'" *Id.* at 203 (quoting *McAlpin v. Davis Const. Inc.*, 332 S.W.3d 741, 744 (Ky. App. 2011). Here, both Ascent/Corporex and D&M tendered breach of contract instructions. After a thorough review, we agree with Ascent/Corporex that the trial court abused its discretion by not permitting the jury to consider the breach of contract claim. Corporex and D&M had a 42-page contract detailing their rights and responsibilities. The cross-claim adequately pled breach of contract and Corporex had evidence that may or may not have convinced the jury had the instruction been given.

In any event, D&M does not really argue that a breach of contract instruction would have been improper (as noted, D&M argued for a contract instruction, as opposed to negligence, during a conference on jury instructions), but rather that this issue was not properly preserved and that Corporex "voluntarily abandoned its breach of contract claim" in the trial court. The record refutes D&M's position. In addition to submitting an instruction for breach of contract, Corporex argued to the trial court that recovery was proper on both the contract and negligence claims and that the jury should render a

37

verdict on both. This proposed instruction and the objections of counsel were sufficient to preserve this issue for appeal and dispel any suggestion that Corporex voluntarily abandoned its contract claim. *See· e.g., Sand Hill Energy, Inc. v. Smith,* 142 S.W.3d 153, 162-63 (Ky. 2004) ("Generally speaking, if a party's 'offered instructions clearly present [the] party's position, no further action is required' to preserve for appellate review an allegation that the trial court erred by failing to give a requested instruction.") (citations omitted).

We also reject D&M's argument that the trial court's failure to instruct the jury on the breach of contract claim was harmless. D&M errs by assuming that because the jury determined that there was no negligence they would similarly conclude that D&M had not breached its contract with Ascent/Corporex. While the underlying facts of both claims were similar, perhaps even identical, it was possible for the jury to determine that D&M breached its specific contractual duties even if its actions were insufficient to warrant relief under a negligence instruction. For example, Ascent/Corporex's counsel questioned D&M representatives at trial regarding specific provisions of its Construction Agreement with D&M including the bid process (Article 3.6.26) and change orders (Article 8).[21] Clearly Ascent/Corporex anticipated arguing that D&M's actions or inactions constituted a breach of specific contractual obligations.[22] The negligence instruction that was given focuses on

---

[21] A copy of the Construction Agreement between Corporex and D&M was admitted at trial as Joint Exhibit #3.

[22] Under Article 3.8 of the Construction Agreement, "[a]ll portions of Work for the Project that the Contractor's [D&M] organization is not accustomed to providing

38

the "[d]egree of care expected to be exercised by ordinary prudent persons engaged in the business of construction management." This is not the same inquiry for the jury as considering whether D&M failed to meet certain specific contractual obligations. The breach of contract instruction tendered by Ascent/Corporex would have allowed the jury to focus on whether breach of D&M's obligations under the Construction Agreement, negotiated by the parties, caused the additional steel work costs. Accordingly, Corporex is entitled to proceed on remand on its claim for breach of contract.

Turning to the challenged negligence instruction, it is not altogether clear that Ascent/Corporex had a negligence claim that was independent of its contract claim. In concluding that both claims were proper and should have been presented to the jury, the Court of Appeals cited *Kevin Tucker & Assocs., Inc. v. Scott & Ritter, Inc.*, 842 S.W.2d 873 (Ky. App. 1992), a case involving a city's negligence and breach of contract claims against an architectural firm. In that case, the appellate court rejected the argument that "any time an act constitutes both a breach of contract and a tort of negligence, the plaintiff is required to waive the tort and sue in contract." *Id.* at 874. The *Tucker* court

shall be performed under Design Builder [Corporex] approved Subcontracts. The form of all Subcontracts shall require the approval of Design Builder [Corporex]." In dispute at trial was whether there was a contract between Superior and D&M and if so what document was the governing instrument. Dan Dugan of D&M admitted at trial that the subcontract between Superior and D&M was a mess and that D&M had not done a good job getting an executed subcontract with Superior. Further, he acknowledged that what D&M considered to be the signed contract with Superior was only sent to Ascent/Corporex after the steel work had been completed. With an appropriate instruction, the jury could have concluded that these actions or inactions regarding the subcontract between D&M and Superior constituted a breach of the Corporex/D&M Construction Agreement.

39

cited *Hovermale v. Central Ky. Natural Gas Co.*, 282 S.W.2d 136, 137 (Ky. 1955), a case practiced under the "old Civil Code" in which a landowner suing a natural gas company for damages to his farm following the laying of a pipeline was required to elect whether to prosecute an action in contract or tort. The second case cited in *Tucker, Alberti's Adm'x v. Nash*, 282 S.W.2d 853 (Ky. 1955) was a wrongful death action following the capsizing of a small boat wherein the court recognized that tort and contract claims could be joined. Our high court affirmed a directed verdict for the defendants on a breach of warranty claim, there being no evidence that the boat "was in an unsound condition" and on the negligence claim given the absence of any legal duty to either equip the boat with life preservers or warn of "choppy waters." *Id.* at 854-55.

Although *Ritter* is accurate insofar as it holds a party having viable contract and negligence claims may pursue both, the initial inquiry is whether there is a negligence claim independent of the contract claim. In *Presnell Constr. Managers, Inc. v. EH Constr.*, 134 S.W.3d 575 (Ky. 2004), a case not cited by the parties, this Court was confronted with negligent supervision and negligent misrepresentation claims involving a commercial building project. The suit was brought by EH, a general contractor, against Presnell, the project's construction manager. Both EH and Presnell had contracts with the building owner, but there was no contractual relationship between EH and Presnell.

40

This Court affirmed the Court of Appeals' holding that summary judgment had been improperly granted on EH's negligent misrepresentation claim, concluding that the interlocking construction contracts did not prohibit a tort claim consistent with Section 552 of the RESTATEMENT (SECOND) OF TORTS, "Negligent Misrepresentation." However, the Court affirmed dismissal of EH's negligent supervision claim because it did "not articulate a claim that is independent of Presnell's contractual duties." *Id.* at 583. Even though the contract referred to was Presnell's contract with the owner, not a contract between Presnell and EH, this Court applied the rule that "'one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract.'" *Id.* at 579, citing *Penco, Inc. v. Detrex Chem. Indus., Inc.*, 672 S.W.2d 948, 951 (Ky. App. 1984).

Perhaps more importantly, Justice Keller's lengthy concurrence in *Presnell*, joined by another member of the Court, discussed extensively the intersection of contract and tort claims and the application of the "economic loss" rule. Justice Keller stated:

> The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others. The crux of the doctrine is not privity but the premise that economic interests are protected, if at all, by contract principles, rather than tort principles. Although originally rooted primarily in product liability cases to protect manufacturers from tort liability for damage that is limited to the product itself, the economic loss rule has evolved into a modern, general prohibition against tort recovery for economic loss.

41

*Id* at 583-84 (citations omitted). He agreed with the economic loss rule's rationale that parties to a contract agree to allocate risks and thus do not need "the special protections of tort law to recover for damages caused by breach of contract." *Id.* at 589. Notably, Justice Keller quoted *Town of Alma v. Azco Constr. Inc.,* 10 P.3d 1256 (Colo. 2000) as follows:

> The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action. . . . [T]he question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty the plaintiff claims the defendant owed. A breach of duty which arises under the provisions of a contract between the parties must be addressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action.

134 S.W.3d at 589 (citation omitted, emphasis in original). The Colorado Supreme Court recognized that some common law tort claims, such as common law fraud and negligent misrepresentation, were expressly designed to remedy economic loss and thus exist independent of a breach of contract claim. *Id.* at 590. The *Presnell* concurrence found these principles persuasive and concluded that a party suffering economic loss from breach of a contractual duty could not assert an independent tort claim absent an independent duty of care under tort law. *Id.* Justice Keller found the negligent supervision claim barred on "economic loss" grounds but agreed with the majority that the rule would not bar a negligent misrepresentation claim.[23]

---

[23] Relatively recently, in *Giddings & Lewis,* 348 S.W.3d at 729, this Court adopted the "economic loss rule" in the context of a commercial purchaser of a product. We held the purchaser was prevented from suing in tort (including for

The *Presnell* concurrence is not binding but it is consistent with *Alberti's Adm'x*, the capsized boat case where the Court recognized that a plaintiff may assert not only a breach of contract but also a negligence claim *provided* there is a separate legal duty to undergird the tort claim. Moreover, the *Presnell* majority plainly held that EM had no negligent supervision claim against Presnell where that tort claim was not "independent of Presnell's contractual duties." 134 S.W.3d at 583.

Here, it is difficult to differentiate Ascent/Corporex's "Breach of Contract" claim from its "Negligent Performance of Contract" claim and indeed the claim terminology itself suggests that the negligence is in the performance of contractual duties. Ascent/Corporex alleges D&M had a "duty to perform. . . work, including management of the steel bids and selection of the steel contractor, in a reasonably prudent and careful manner and in a manner consistent with industry standards." They do not allege the source of this duty, common law or otherwise, but, regardless, it seems indistinguishable from D&M's duties under the Corporex/D&M contract. The six specific examples of breach under the "Negligent Performance of Contract" claim (*e.g.*, failure to ensure bids were based on most recent drawings, failure to advise Corporex about the erector's qualification) match up very closely, if not exactly, with the allegations regarding the breach of the contract. In short, it is difficult

---

negligent misrepresentation) for economic losses arising from the malfunction of the product itself, recognizing that those damages had to be recovered under the parties' contract. The parties have not raised the economic loss rule and we express no opinion on its applicability to Ascent/Corporex's claims against D&M.

to conclude that Ascent/Corporex even had a viable negligence claim independent of the contract claim but, to the extent they did, the jury instruction was adequate.

First, we note that D&M contends that Ascent/Corporex waived appellate review of the negligence instruction, by agreeing with the trial court wording for this instruction, while Ascent/Corporex maintains that D&M's argument is a mischaracterization of their position concerning the negligence instruction. In reviewing the record, it is clear that Ascent/Corporex agreed at least with a portion of the wording of the trial court's negligence instruction but, in any event, having tendered a negligence instruction, Ascent/Corporex preserved their objection. *Sand Hill Energy*, 142 S.W.3d at 162-63.

In considering the content of the trial court's negligence instruction, we engage in *de novo* review. *Sargent*, 467 S.W.3d at 204. The trial court's negligence instruction, was the last portion of the jury instructions and its consideration was predicated on the jury having first determined that extra work had been performed by Superior and/or Ben Hur on the Project. The instruction provides as follows:

> The Defendant, Corporex, on behalf of the Ascent at Roebling's Bridge LLC, contracted with Dugan & Meyers to have Dugan & Meyers serve as construction manager for the Ascent project. Corporex is obligated to pay the cost of the project. You have found that extra work was incurred by the Plaintiffs in the construction of the Ascent project. Corporex is responsible for that extra work except to the extent that such extra work was due to the negligence of the Defendant, Dugan & Meyers, in performing its duties under the construction management contract.

44

'Ordinary Care' as used in these Instructions is defined as that Degree of care expected to be exercised by ordinary prudent persons engaged in the business of construction management.

Question No. 9: Do you find from the evidence that the Defendant, Dugan & Meyers, failed to exercise ordinary care in the performance of its obligations under the construction management contract with Corporex and that such failure was a substantial factor in causing the extra work performed by the Plaintiffs?"[24]

Ascent/Corporex contend that the trial court's instruction was erroneous due to the statement that "Corporex is responsible for that extra work except to the extent that such extra work was due to the negligence of the Defendant, Dugan & Meyers, in performing its duties under the construction management

_____

[24] This instruction was not dramatically different from the one tendered by Ascent/Corporex.

INSTRUCTION NO. 14

Corporex's Claim Against Dugan & Meyers For Negligent Performance of Contract

Corporex and The Ascent allege that Dugan & Meyers failed to exercise ordinary care in managing the project and that these failures caused Corporex to incur monetary damages.

You are instructed that Dugan & Meyers had a duty to exercise ordinary care in managing, among other things, the steel bid process, the steel work, Superior Steel's and Ben Hur's change requests and the extra work claimed by Superior Steel and Ben Hur. "Ordinary care" as applied to Dugan & Meyers means such care as you the jurors would expect an ordinarily prudent person engaged in the same type of business to exercise under similar circumstances.

You will find for Corporex and The Ascent if you are satisfied from the evidence as follows:

1. Dugan & Meyers breached its duty of ordinary care; and

2. Dugan & Meyers' failure to exercise ordinary care was a substantial factor in causing Corporex to incur unanticipated additional costs for engineering, material and labor provided by either Superior Steel or Ben Hur.

Proceed to Question No. 14.

Question No. 14 was simply whether D&M failed to comply with its duty and if such failure was a substantial factor in causing the extra work.

45

contract." According to Ascent/ Corporex, this statement resolves the heart of their dispute with D&M, namely who is responsible for the alleged additional work on the project. Further, Ascent/Corporex argue that this is not an accurate statement of the relationship between the parties based on the terms of their contracts, which required the "Steel Team" to seek payment from D&M as opposed to Ascent/Corporex. The Court of Appeals agreed that the trial court's instruction was erroneous due to its statement regarding Ascent/Corporex's responsibility for the extra work on the Project.

We disagree that the trial court's negligence instruction was faulty. It was uncontested at trial that representatives from Corporex and D&M had met with the "Steel Team" and informed them that they would be compensated for extra work performed on the contract. Under the terms of the Corporex/D&M contract, Corporex was obligated to pay D&M for the cost of the Project, which would include the extra work performed by the "Steel Team." After D&M received payment from Corporex, D&M would then be required to make payment to Superior (and Superior to Ben Hur). As the jury found that Superior and Ben Hur had performed extra work, they were ultimately due compensation from Ascent/Corporex as the owners of the Project. Instruction No. VI acknowledged that fact, and the jury only encountered the Instruction and accompanying interrogatory after it had first determined that extra work was indeed performed.

To the extent a negligence instruction was even proper, the trial court correctly instructed the jury that they could decide that D&M's negligence

46

necessitated the extra work. If the jury determined that D&M had failed to exercise ordinary care, the jury could then assess what portion of the costs of the extra work it sought to attribute to D&M's negligence, thereby relieving Ascent/Corporex of some or all of the liability. Ultimately, the jury declined to do so and found Ascent/Corporex responsible for the cost of extra work done on their Project. As the trial court's negligence instruction was sufficient, the Court of Appeals erred by finding otherwise.

## CONCLUSION

For the reasons explained herein, we affirm the judgment of the Court of Appeals in part, reverse in part, and remand for further proceedings consistent with this Opinion.

Minton, C.J.; Cunningham, Keller and Venters, JJ., concur. VanMeter, J., concurs in part and dissents in part by separate opinion in which Wright, J., joins.

VANMETER, J., CONCURRING IN PART AND DISSENTING IN PART: I concur with most of the well-written and thorough majority opinion. However, I respectfully dissent with so much as holds Superior Steel's attorneys' fees are not recoverable under its subcontract with Dugan & Meyers. The attorneys' fees provision in the subcontract is sufficiently broad to entitle Superior Steel to attorneys' fees, since, as the majority notes, it was forced to litigate that it had not breached the subcontract and was entitled to payment for the extra work performed. Notwithstanding it ultimately had no remedy against Dugan & Meyers to enforce payment under the subcontract, in my view, Superior Steel

47

was still "[t]he prevailing party in [a] dispute arising out of or relating to this

Agreement or its breach[.]"


COUNSEL FOR APPELLANTS/CROSS-APPELLEES:
SUPERIOR STEEL, INC., AND BEN HUR
CONSTRUCTION COMPANY, INC.

Griffin Terry Sumner
John Kendrick Wells, IV
Donald Scott Gurney
Frost Brown Todd, LLC


COUNSEL FOR APPELLEES/CROSS-APPELLANTS
AND CROSS-APPELLEES:

THE ASCENT AT ROEBLING'S BRIDGE, LLC

Mark T. Hayden
John Nalbandian
Taft Stettinius & Hollister LLP


CORPOREX DEVELOPMENT AND CONSTRUCTION
MANAGEMENT LLC., AND WESTCHESTER FIRE
INSURANCE COMPANY

Mark T. Hayden
John Nalbandian
Taft Stettinius & Hollister LLP


COUNSEL FOR CROSS-APPELLANT:
DUGAN & MEYERS CONSTRUCTION
COMPANY

Thomas J. Kirkwood
Kimberly Ellen Ramundo
Heather Hawkins
Thompson Hine LLP

COUNSEL FOR AMICUS CURIAE,
THE AMERICAN INSTITUTE OF STEEL
CONSTRUCTION:

Kenneth Allen Bohnert
Edward Francis Busch
Scott Alan Johnson
Conliffe, Sandman & Sullivan


COUNSEL FOR AMICUS CURIAE,
THE AMERICAN SUBCONTRACTORS
ASSOCIATION:

Thomas Russell Yocum
Richard Weber
Benjamin Yocum & Heather LLC