**FURLONG DEVELOPMENT CO., LLC; and Gordon Stacy, Appellants**

v.

**GEORGETOWN–SCOTT COUNTY PLANNING AND ZONING COMMISSION; EGT Properties, Inc.; and United Bank & Trust Company, Appellees**

2014–SC–000594–DG

Supreme Court of Kentucky.

DECEMBER 15, 2016

COUNSEL FOR APPELLANTS:, Jeffrey Clayton Rager

COUNSEL FOR GEORGETOWN–SCOTT COUNTY PLANNING AND ZONING COMMISSION, APPELLEE:, Charles Perkins

COUNSEL FOR EGT PROPERTIES, INC., AND UNITED BANK & TRUST COMPANY, APPELLEES:, Steven B. Loy, Monica Hobson Braun

## OPINION OF THE COURT BY JUSTICE CUNNINGHAM

Developer, Furlong Development Company and its owner, Gordon Stacy, (collectively referred to as "Developer"), owned a 26–acre tract of real estate in Georgetown, Kentucky. Developer intended to develop the property into 90 single-family residential lots known as "The Enclave." Developer secured financing through United Bank & Trust Company (hereinafter "the Bank"). The Bank provided financing in excess of 4 million dollars. Gordon Stacy, acting individually and in his capacity as Developer's owner, guaranteed the loans by executing a promissory note and mortgage in favor of the Bank.

Pursuant to a local municipal ordinance, Developer was required by the Georgetown-Scott County Planning and Zoning Commission ("the Commission"), to provide a surety bond in the amount equal to 125% of the estimated cost of building certain infrastructure. Platt River Insurance Company (hereinafter "Insurer") backed the bonds. Notably, Developer agreed to indemnify Insurer against any losses.

Insurer, as surety for the Developer, executed three separate instruments each entitled "Subdivision Bond" (collectively referred to as "Bond Agreements"). Each bond was for a different amount, totaling in excess of $148,000. The Bond Agreements specifically provided:

WHEREAS, this bond is required in an amount to 125% of the estimated costs of all improvements described in the plans approved by [the Planning Commission]; AND

WHEREAS, [the Commission] has approved the improvement plans for the project known as the Enclave Subdivision [ ] Sidewalk and handicap Ramps, 1' Asphalt Surfaced, and Storm Cleanup . . . ."

In 2008, the real estate market crashed. As a consequence, Developer defaulted in its loan from the Bank.

At that time, "The Enclave" development was worth less than the amount remaining on the loan. In other words, there was no equity in the land. Nevertheless, the Bank agreed to accept a deed in lieu of foreclosure. Developer executed the appropriate documents and deeded the property to the Bank's property management company, EGT. In return, the Bank released Developer from its obligations under the various loan agreements. Gordon Stacy was also released from his individual liability.

Sometime thereafter, the Bank transferred the property to another internal holding company, EKT (hereinafter "Holding Company"). The Bank also sent a let-

ter to the Commission requesting that the Commission call Developer's bonds and that the proceeds be placed in escrow for the purpose of reimbursing the Bank for the completion of the necessary infrastructure projects required by the Developer's approved plat.

The Commission complied with the request, but both Developer and Insurer refused to pay. Insurer filed a declaration of rights action against Developer in the U.S. District Court for the Eastern District of Kentucky, seeking indemnity in the event that the Insurer was ordered to pay the bond amount. The federal court entered an Agreed Judgment under which Developer agreed to be jointly and severally liable to Insurer for $43,359.50, with the court retaining jurisdiction to re-open and amend that judgment "in the event the surety bonds issued by [Insurer] are eventually paid."

Developer also filed a declaratory judgment action against the Commission, the Bank, and the Holding Company in Scott Circuit Court. It alleged that the bonds were not callable and that payment on the bonds would result in the Bank receiving an unjust enrichment. The enrichment would result with the Bank/Holding Company owning the land without any obligation to incur the infrastructure cost. Although there was no equity in the property, the deed in lieu of foreclosure had released Developer from any obligations regarding the land.

At the trial court, the defendants moved for summary judgment. The court granted the motion, holding that neither Insurer nor Developer was released from their obligations under the Bond Agreements. In a split decision, the Court of Appeals affirmed the trial court. Although Insurer was added as a party on appeal, Insurer did not file a brief or formally join Developer in their arguments before the Court

of Appeals. We granted Developer's motion for discretionary review. Insurer did not request discretionary review and is not a party to this appeal. Having reviewed the record and the law, we affirm the Court of Appeals' decision.

## Standard of Review

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Coomer v. CSX Transp. Inc.*, 319 S.W.3d 366, 370 (Ky. 2010). We review a trial court's summary judgment ruling *de novo. Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010). We must also view the record in a light most favorable to the nonmoving party and resolve all reasonable doubts in that party's favor. *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991).

## Analysis

Developer contends that the plain language of the Bond Agreements is not dispositive of the present matter and that additional evidence must be considered in order to obtain the parties' intent. We interpret the terms and provisions of the Assignment according to well-established principles of contract law. *See, e.g., Hazard Coal Corp. v. Knight*, 325 S.W.3d 290, 298 (Ky. 2010).

### Legal Arguments

Despite the plain language of the Bond Agreements, Developer asserts that the bonds were not callable because no homes had been built on the development property prior to Developer's default. In support of its argument, Developer urges this Court to adopt the reasoning presented in *Westchester Fire Insurance Co. v. Brooksville*, 731 F.Supp.2d 1298 (M.D. Fla. 2010).

In that case, the city approved the development of a five-phase subdivision community. Each phase had its own plat. Similar to the present case, the city required that the developer post a bond to ensure the construction of "several on-site improvements, including earthwork, roadways, storm lines, potable water lines, reclaimed water lines, and sanitary sewer lines (the 'Phase Two Improvements')." *Id.* at 1300. Before beginning construction on Phase Two, the developer petitioned for bankruptcy. The bankruptcy court subsequently granted the developer's motion to abandon the development. As a result, the city demanded payment on the bonds and filed suit against the developer's surety in state court. The development property was eventually sold to another development company.

The matter subsequently came before the U.S. District Court which determined that, "the bonds and the ordinance construed together impose a condition that construction of the development proceed before the City may collect." *Id.* at 1305. The ordinance to which the court was referring required "the posting of a bond 'to ensure that future owners [will] be able to connect their lots to the City's utility services.' " *Id.* at 1307. In holding that the neither the developer nor its surety was obligated to pay the bond, the court reasoned:

> Because no homeowner exists in Phase Two for whom the City must ensure the availability of utility services, requiring payment on the bonds both creates a cash windfall for the City and fails to achieve the purpose of the City's ordinance. Because no home exists in Phase Two that requires the City's utility services, requiring the City to install improvements on undeveloped land (and requiring [surety company] to reimburse the City's cost to install the improvements) imposes an unreasonable forfei-

ture against [surety company] and promotes an unreasonable windfall for the City. *Id.* at 1307 (footnote omitted).

■ Unlike the documents at issue in *Brooksville*, the relevant documents in the present case are very clear that Insurer, on behalf of Developer as principal, was obligated to pay the bonds. The Bank release documents specifically state that "there is no assumption by [Holding Company] of the obligations and liabilities under any instruments or agreements with third parties and all such obligations and liabilities remain the responsibility of [Developer]. . . ." The Commission clearly constitutes a third party under the terms of the Bank's release.

Furthermore, the Bond Agreements at issue here concerned the Developer, Insurer, and the Commission; not the Bank. Therefore, neither the Bank nor its Holding Company assumed liability under the bonds or had the authority to discharge the bonds on behalf of the Commission.

In addition, the fact that the Bank's representative requested that the Commission call the bonds and then distribute those proceeds to the Holding Company upon completion of the necessary improvements does not expressly or implicitly violate the previously executed discharge agreement. Rather, the Bank's proposition to the Commission served to protect the Bank's investment which, at that time, constituted a significant loss. This was an economically rational and otherwise lawful request by the Bank. However, the extent to which the bond funds may be allocated to new or additional improvements is a different matter that will be subsequently discussed at length.

Another critical distinction between *Brooksville* and the present case is the absence of any local ordinance that must be read in conjunction with the Bond

Agreements in order to "impose a condition that construction of the development proceed before the City may collect." *Brooksville*, 731 F.Supp.2d at 1305. Even if we were to accept the *Brooksville* court's application of Florida law as instructive, there is no ordinance in the present case that is relevant to our determination.

More specifically, Developer's reliance on a 2003 Georgetown City Ordinance is misplaced. That regulation provides in part:

Any proposed roadway to be dedicated to the City of Georgetown for the maintenance can apply final inch of asphalt surface after 80 percent of the lots that are served by the roadway has received a Certificate of Occupancy.

Neither the Bond Agreements nor this ordinance even remotely imply that the construction of houses is a condition precedent to payment of the bond. Also, the improvements enumerated in the Bond Agreements include several improvements that are in addition to the roads referenced in the regulation. There is no need to consider this irrelevant regulation.

In further contrast to *Brooksville*, the record in the present case indicates that Developer completed significant aspects of the development prior to Developer's default and subsequent transfer of the property to the Holding Company. Even though Developer had not begun building a single house on the property, Developer admits in its brief that it developed the property "to the point where houses could be built [and that it] attempted to sell individual parcels." Therefore, it is clear that the property had been irreparably converted from rural farm land and had undergone significant stages of sub-division development. This reduces both the Bank and potential buyers' flexibility in developing the land, which could also affect its value.

■ Lastly, Developer argues that it is not liable under the bond because the Commission has not suffered any damages. We disagree. This same issue was addressed in *Bd. of Supervisors of Stafford County v. Safeco Ins. Co. of America*, 226 Va. 329, 310 S.E.2d 445 (1983). Therein, the Supreme Court of Virginia held:

It was unnecessary for the County to prove a financial loss as a prerequisite to recovery from [the surety]. A performance bond is intended to guarantee completion of the improvements it covers. Thus, the obligee of such a bond need not incur any expense or do any work on the improvements before collecting on the bond. *Id.* at 335.

We agree with the Court's reasoning and adopt it here.

In addition to *Safeco*, at least one other jurisdiction has also affirmed the right of regulatory bodies to call performance bonds based on facts that are extremely similar to those at issue here. *See City of Merced v. American Motorists Ins. Co.*, 126 Cal.App.4th 1316, 24 Cal.Rptr.3d 788 (2005). In sum, we find *Brooksville* and its supporting cases to be distinguishable from the present case and otherwise unpersuasive.

### Unjust Enrichment

■ Developer also contends that if it is required to pay the bond proceeds, the Commission would then transfer those funds to the Holding Company, thus resulting in an unjust enrichment to the Holding Company. This logic presumably applies to any entity that receives the bond proceeds in order to develop the property.

■ In order for a party to prevail under the theory of unjust enrichment, it must prove three elements: "(1) benefit conferred upon defendant at plaintiffs expense; (2) a resulting appreciation of bene-

fit by defendant; and (3) inequitable retention of benefit without payment for its value." *Jones v. Sparks*, 297 S.W.3d 73, 78 (Ky. App. 2009); *see also Guarantee Electric Co. v. Big Rivers Electric Corp.*, 669 F.Supp. 1371, 1380–81 (W.D. Ky. 1987).

■ As the Court of Appeals correctly observed, unjust enrichment is unavailable when the terms of an express contract control. *Sparks Milling Co. v. Powell*, 283 Ky. 669, 143 S.W.2d 75, 76 (1940); and *Bates v. Starkey*, 212 Ky. 347, 279 S.W. 348, 350 (1926). The facts of the present case provide no reason to depart from this well-reasoned principle. As previously stated, the payment of the bonds is expressly controlled by the terms of the Bond Agreements.

Although this Court cannot provide stability in housing prices, we can provide stability in contract. And although equity is no stranger to actions involving real property and common interest communities in particular, the present issue is most appropriately resolved as a matter of law in accordance with sound contract principles.

### New Subdivision Plat

■ Developer additionally argues that it should not be liable under the Bond Agreements because the Bank, through the Holding Company has altered the original development plan. In support, Developer has moved that we take judicial notice of the *current* subdivision plat that is filed in the Scott County Clerk's Office. *See* KRE 201. This document was obtained from the Scott County Planning and Zoning Commission. We decline to take judicial notice of the allegedly amended plat.[1] Our review is confined to the record presented to the trial court when it considered and granted Appellees' motions for summary judgment.

Our holding is restricted to a developer's liability for the improvements that were required under the original bonded plat. This comports with decisions of other jurisdictions that have addressed similar issues. In *City of Merced v. American Motorists Ins. Co.*, for example the court held that when a developer who is contractually responsible pursuant to a performance bond for constructing public improvements in a subdivision and fails to perform, the value of the public entity's unfulfilled right is "the cost of bringing the subdivision into compliance by installing the *bargained-for* improvements." 126 Cal.App.4th at 1323, 24 Cal.Rptr.3d 788 (emphasis added). *See also Safeco*, 310 S.E.2d at 448–49 (observing that "a performance bond is intended to guarantee completion of *the improvements it covers.*") (emphasis added and citation omitted). Any improvements that are in addition to or materially distinct from those presented in the original plat cannot be considered bargained for by the developer. The developer would not be liable for those improvements.

### Discovery Issues

■ First, Developer claims that it was entitled to additional discovery before the court ruled on Appellees' summary judgment motion. Developer takes specific issue with the trial court's order granting Appellees' request for a protective order to stay discovery until after the court considered Appellees' motion for summary judgment. We review the trial court's decision to stay or suspend discovery for an abuse of discretion. *Rehm v. Clayton*, 132 S.W.3d 864, 869 (Ky. 2004).

■ The subject of the protective order was discovery requests tendered by Insurer, not Developer. Therefore, Developer does not have standing to contest the

---

1. Developer's motions for judicial notice and to supplement are denied.

trial court's protective order. In its response to the Bank's Summary Judgment Motion, however, Developer requested "a reasonable time for discovery."

Developer has failed to specifically identify the items of evidence that it was foreclosed from receiving and has also failed to state why the introduction of those items into the record would have created a genuine issue of material fact in order to survive Appellees' motion for summary judgment. And for the reasons previously discussed, the Bank had every right to request that the Commission call the bonds and distribute the proceeds to the Bank and/or its Holding Company as compensation for *required* improvements. Therefore, any undisclosed materials that Developer argues may shed light on the Banks' encouragement to call the bonds are irrelevant to the disposition of this case.

Lastly, Developer claims that the trial court erroneously denied their CR 60.2 motion. We review for an abuse of discretion. *Bethlehem Minerals v. Church and Mullins Corp.*, 887 S.W.2d 327 (Ky. 1994). The basis for the motion was newly discovered evidence specifically, an affidavit of David Thornton, the insurance agent who aided in brokering the bond purchase. Mr. Thornton revealed that, in 2008, the Bank and Commission initially intended to release Developer and Insurer from the Bond Agreements upon transfer of the development property to the Bank.

As the Court of Appeals correctly noted, the newly discovered evidence at issue must be so significant that it would, with reasonable certainty, change the outcome of the proceeding. *See Foley v. Commonwealth*, 55 S.W.3d 809, 814 (Ky. 2000). Developer has failed to satisfy this standard. The Commission retained the liberty to discharge liability under the Bond Agreements and the Bank retained the liberty to assume the bond liability on

behalf of the Developer and Insurer. This was their right under contract. In the end, the Bank and the Commission chose a different path that was also lawful. Therefore, the trial court did not abuse its discretion in denying Developer's CR 60.2 motion.

### Conclusion

For the foregoing reasons, we hereby affirm the decision of the Court of Appeals. We also affirm the decision of the Scott Circuit Court granting summary judgment in favor of Appellees.

All sitting. Minton, C.J.; Hughes, Keller, Noble, and Venters, JJ., concur. Wright, J., dissents by separate opinion.

### WRIGHT, J., DISSENTING:

I respectfully dissent from the majority. Forcing developer to forfeit the bonds in this case amounts to punitive damages, which are not allowed in Kentucky contract law. At the outset, I point out that the lower courts failed to consider the issue of damages and whether they were punitive (and, therefore, prohibited by statute). Understandably, the majority's opinion does not consider the issue because the parties failed to raise or argue it.

### I.  BACKGROUND

Developer obtained property in Scott County and began plans for a subdivision. It applied to the Georgetown–Scott County Planning and Zoning Commission for a permit to develop the subdivision. Ordinances required Developer to post a bond to ensure performance of certain work before selling any lots. Accordingly, Developer purchased bonds from Platt River Insurance Company for 125% of the estimated cost of building certain infrastructure. Developer did the work necessary to sell lots in the subdivision, but before sell-

ing any lots, the real estate market collapsed in 2008, leaving Developer unable to sell the lots or to borrow additional money. Eventually, Developer agreed to transfer the property to the bank's Holding Company in exchange for the bank's agreement to forego foreclosure proceedings.

The bank informed the Zoning Commission that Developer had abandoned the project. The bank's Holding Company altered the subdivision plan and began to develop the subdivision accordingly. At that point, the bank suggested Developer had abandoned the project and that the bond should be declared forfeited. The Holding Company asked the Zoning Commission to use the forfeited bond money to pay the Holding Company the bond amounts allocated for each portion of the project covered by the bonds as it completed them. I point out that the ordinance provides for the partial release of bonds—it is not an all-or-nothing proposition.

The Commission declared the bonds forfeited and Developer filed a declaratory judgment action against the Zoning Commission, the bank, and the Holding Company in Scott Circuit Court. The Zoning Commission moved for summary judgment. The trial court ruled that, due to the amount of money Developer had spent on the project, the nature of the property must have changed. The trial court failed to conduct a hearing on the extent that Developer's work had changed the property, whether development had been connected to any public services, or whether any public services would be required because of the development. The court entered summary judgment and ordered the entire bond forfeited.

## II.  ANALYSIS

### A.  The Bond is a Contract

"A bond agreement is a contract . . . ." *Five Star Lodging, Inc. v. George Const., LLC,* 344 S.W.3d 119, 123 (Ky. Ct. App. 2010). The particular bond at issue in this case is a contract with the Zoning Commission as a third-party beneficiary. This is consistent with the majority's opinion's statement that "[w]e interpret the terms and provisions of the Assignment according to well-established principles of contract law." *See City of Middlesboro v. Am. Sur. Co. of N.Y.,* 307 Ky. 769, 211 S.W.2d 670, 671 (1947) (discussing "whether a bond and the renewals thereof constitute multiple contracts or one continuing contract"). Having established that a bond is a type of contract, I will now examine the types of damages available.

### B.  Damages

Two types of damages are available in contract: actual and liquidated. Actual damages are not at issue here since the trial court failed to make any determination of damages incurred. The majority affirms the trial court's decision that the entire bond is forfeited and the Zoning Commission did not have to prove any damages. The ordinance fails to specify that the bonds would constitute liquidated damages or that the entire bond amount would be forfeited regardless of the actual cost of completion. Since actual damages are irrelevant to the forfeiture here, then forfeiture of the bond must be for liquidated damages.

Liquidated damages are allowed under Kentucky contract law, unless their amount is substantially higher than the actual injury incurred. "If the stated amount is substantially higher than the actual injury suffered, the provision will be declared a penalty and not enforceable. *G.D. Deal Holdings, Inc. v. Baker Energy, Inc.,* 501 F.Supp.2d 914, 923 (W.D. Ky. 2007), *aff'd sub nom. G.D. Deal Holdings, LLC v. Baker Energy, Inc.,* 291 Fed.Appx.

690 (6th Cir. 2008) *(citing Coca–Cola Bottling Works (Thomas) Inc. v. Hazard Coca–Cola Bottling Works, Inc.,* 450 S.W.2d 515, 518 (Ky.1970)); *see also Patel v. Tuttle Properties, LLC,* 392 S.W.3d 384, 387 (Ky. 2013) (" 'A provision in a contract providing for liquidated damages will be enforced, provided it is in actuality liquidated damages and not a penalty. If such provision is in fact a penalty it will not be enforced and the injured party will be entitled to recover the actual damages suffered.' " *(quoting Fidelity & Deposit Co. of Maryland v. Jones,* 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934))).

Furthermore, "[w]here, at the time of the execution of the contract, damages may be uncertain in character or amount, or difficult to reasonably ascertain, a provision for liquidated damages will be enforced, provided the amount agreed upon is not greatly disproportionate to the injury which might result." *United Servs. Auto. Ass'n v. ADT Sec. Servs., Inc.,* 241 S.W.3d 335, 340–41 (Ky. Ct. App. 2006). The damages in the present case are certain in character since they are specified in the subdivision plan. The damages are also certain as to amount since the bond was set on the estimated cost plus 25%. Obtaining bids or estimates on the cost of completing the specified infrastructure would be a routine part of normal business in the construction industry. Therefore, the amount of any damages would be easy to reasonably obtain. The forfeiture of the bonds in this case fails to meet any of the criteria normally required for liquidated damages.

In the present case, the amount of liquidated damages could easily be far in excess of any actual damages. Developer spent more than $4 million developing the property and had reached the stage at which it could sell lots. It would appear that much of the infrastructure development had been done, but the trial court failed to make any determination as to how much completion would cost. Rather, the trial court merely stated in its order granting summary judgment that "[t]here is proof that a great deal of the work necessary to turn the property into a subdivision had been done in that the bank had distributed over $4,000,000 at the time of the default ...." The liquidated damages received as a result of any forfeiture would be 125% of the total cost of developing the infrastructures. If Developer had completed most or a substantial portion of the infrastructure construction, then the liquidated damages of total bond forfeiture would be greatly disproportionate to the actual injury. This would make forfeiture of the bonds—at least in part—a penalty and, therefore, would amount to punitive damages. This is prohibited under Kentucky law. In fact, we have a statute directly on point which reads, "[i]n no case shall punitive damages be awarded for breach of contract." KRS 411.184 (4). Since the trial court failed to make any finding as to the amount of damages, if any, then there is an issue of fact and the summary judgment fails to meet the standard under *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991).

## C. Bond Vests Only When Lots Are Sold

Georgetown's governing ordinance specifies that the bond shall be posted before lots can be sold. This makes the selling of the lots the triggering event for the binding of the bond. As the Zoning Commission points out in its brief, "[t]he public improvements that are covered by the bonds are sidewalks, handicap ramps, storm cleanup, landscaping, and the final layer of asphalt (Vol. II, Rec. 245–50). Once the bonds were in place, the Commission approved the final plat, which allowed [Developer] to sell lots. (Vol. II, R. 232;

KRS 100.277(3)).” In the present case, Developer did not sell any lots. Therefore, nothing occurred to trigger the bonds or their forfeiture.

I would also point out that nothing in the ordinance indicates that the *entire* bond (even portions already spent making the required developments—as occurred here) should be forfeited, even if lots had been sold. As the Zoning Commission also states in its brief, quoting the bond language: the insurance carrier and Developer “ ‘are jointly and severally held and firmly bound unto [the Zoning Commission]’ for ‘the costs of labor and materials and successful construction, completion and acceptance of all improvements.’ ” Here, the majority takes the contractual terms bargained for by the parties and expands them to take the complete bond, with no regard as to the amount it will actually take for completion.

### D. Trial Court Did Not Determine Any Damages Occurred

The Zoning Commission would only have damages if lots had been sold, thus leaving purchasers in need of the infrastructure, connections to public utilities, or roads. The trial court failed to determine if any of these events had occurred. If the Planning and Zoning Commission did not have any actual damages, then forfeiture of the bonds would be punitive and prohibited by statute.

### III. CONCLUSION

For these reasons, I respectfully dissent and would remand this matter to the trial court, as summary judgment was not properly granted.