CLAYTON, JUDGE:
*709 CLK Multifamily Management, LLC ("CLK") filed a third-party complaint in the Jefferson Circuit Court against Greenscapes Lawn & Landscaping, Inc. ("Greenscapes"), seeking indemnification in a slip and fall case. The circuit court granted Greenscapes's motion to dismiss the complaint and denied CLK's subsequent motions to alter, amend or vacate and for leave to amend the complaint in a series of orders entered on September 30, 2016, March 7, 2017, and April 6, 2017. CLK brings this appeal from those orders. The primary issue is whether a clause in a snow removal contract between CLK and Greenscapes bars CLK from seeking indemnification in the underlying slip and fall case.
CLK is the property manager of the LaFontenay apartment complex located in Louisville, Kentucky. In November 2013, CLK entered into a snow removal contract with Greenscapes for the period from November 2013 to March 2014. Under the terms of the contract, Greenscapes agreed to remove snow from the roadways in the apartment complex when two or more inches of snow had accumulated. The contract contained the following clause:
Liability: Contractor [Greenscapes] shall only be liable for the gross negligence, bad faith & willful misconduct of the Contractor, its agents or employees. Greenscapes will not be liable for any slip and fall accidents caused by snow, ice or wet conditions.
In 2007, some years prior to entering into the snow removal contract, Greenscapes had signed CLK's Vendor Service Agreement ("VSA"). It states in part as follows:
If you are providing any type of good and/or service that requires your company to send a representative to the apartment community you must also have a current certificate of insurance on file with ComplianceDepot for general liability, auto, and workers compensation. The certificate of insurance must include additional insured language that will provide coverage for ongoing and completed operations on the general liability policy. The format for this specific additional insured language is as follows: "CLK Multifamily Management LLC, CLK Management Corp. and all their affiliated, owned, managed and related subsidiaries are additional insureds with respect to the general liability insurance policy. " This certificate of insurance must remain current and any lapse in coverage will result in the termination of future purchases of goods and services.
On January 27, 2015, Jane Hermes, a tenant of LaFontenay, filed a complaint against CLK and New Plan 101 LaFontenay III Apts. in Jefferson Circuit Court, alleging that she was injured when she fell on some ice at the apartments on February 5, 2014.
CLK filed a third-party complaint against Greenscapes, alleging that (1) CLK was entitled to contractual and/or common law indemnity from Greenscapes; (2)
*710 Greenscapes had breached the snow removal contract; and (3) CLK was entitled to contribution and/or apportionment of fault against Greenscapes for the slip and fall alleged by Hermes.
Greenscapes filed a motion to dismiss the complaint. After hearing arguments, the trial court granted the motion in an order entered on September 30, 2016, on the grounds that there were no genuine issues of material fact and Greenscapes was entitled to judgment as a matter of law. The claims of CLK against Greenscapes as contained in the third-party complaint were dismissed with prejudice.
CLK filed a motion to alter, amend or vacate the judgment seeking an explanation of the basis for the dismissal, and specifically asked the trial court to clarify whether it intended to dismiss the claims against Greenscapes and its insurer under the vendor service agreement. CLK also sought leave to amend its third-party complaint to add claims against Greenscapes for failing to secure insurance for CLK, and claims against a new party, Secura Insurance, for failing to treat CLK as an additional insured.
Following briefing and oral arguments, the trial court entered an order on March 7, 2017, again granting dismissal of the third-party complaint. CLK filed a renewed motion requesting clarification of the March 7 order. The trial court entered an order denying the motion to alter, amend or vacate, the renewed motion to alter, amend or vacate, and the motion for leave to file an amended complaint. This appeal by CLK followed.
CLK argues that the circuit court erroneously applied the summary judgment standard in reviewing Greenscapes's motion to dismiss. Kentucky Rules of Civil Procedure (CR) 12.02 states in part: "If, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" Greenscapes filed its motion to dismiss based on the liability clause of the snow removal contract, a copy of which was attached to CLK's third-party complaint. In responding to the motion to dismiss, CLK attached an exhibit from Hermes's deposition and a copy of the VSA. "Where matters outside the pleadings are considered on a motion to dismiss for failure to state a claim, the motion must be treated as one for summary judgment." Harrodsburg Indus. Warehousing, Inc. v. MIGS, LLC , 182 S.W.3d 529, 533 (Ky. App. 2005) (citing Ferguson v. Oates, 314 S.W.2d 518 (Ky. 1958) ). In its order of dismissal, the circuit court expressly stated that that it had "considered all submissions offered in support of and in opposition to the motion[.]" Under these circumstances, the circuit court did not err in applying the summary judgment standard.
CR 56.03 provides that summary judgment is appropriate when no genuine issue of material fact exists, and the moving party is therefore entitled to judgment as a matter of law. Summary judgment may be granted when "as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor and against the movant." Steelvest, Inc. v. Scansteel Serv. Ctr., Inc. , 807 S.W.2d 476, 483 (Ky. 1991) (internal quotation marks and citation omitted).
CLK argues that its appellate rights were impaired because the circuit court did not enumerate which specific claims it dismissed and did not provide the grounds for its ruling. CLK relies on an unpublished opinion of this Court, which observed *711 that the failure of the trial court to provide a basis for its grant of summary judgment made it difficult for the appellate court to review the decision. See Stinson v. Wal-Mart Stores E., LP , No. 2012-CA-001711-MR, 2013 WL 4041457, at *1 (Ky. App. Aug. 9, 2013).
Findings, while they may be helpful, are not mandatory. "[F]indings of fact are not necessary in summary judgments.... Our concern is whether or not there were unresolved genuine issues of fact and whether or not the appellees were entitled to judgment as a matter of law." Pence Mortg. Co. v. Stokes , 559 S.W.2d 500, 504 (Ky. App. 1977). The circuit court was not obligated to make specific findings to support its decision. "An appellate court need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are involved." Coomer v. CSX Transp., Inc. , 319 S.W.3d 366, 370-71 (Ky. 2010) (quoting Hallahan v. The Courier Journal , 138 S.W.3d 699, 705 (Ky. App. 2004) ).
CLK's first argument concerns the liability clause of the snow removal contract, which it claims does not exculpate or exempt Greenscapes from liability for Hermes's alleged injuries. We set forth the clause again below:
Liability: Contractor [Greenscapes] shall only be liable for the gross negligence, bad faith & willful misconduct of the Contractor, its agents or employees. Greenscapes will not be liable for any slip and fall accidents caused by snow, ice or wet conditions.
"The construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." First Commonwealth Bank of Prestonsburg v. West , 55 S.W.3d 829, 835 (Ky. App. 2000) (citing Hibbitts v. Cumberland Valley National Bank & Trust Co., 977 S.W.2d 252, 254 (Ky. App. 1998) ). "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms, and a court will interpret the contract's terms by assigning language its ordinary meaning and without resort to extrinsic evidence." Frear v. P.T.A. Industries, Inc. , 103 S.W.3d 99, 106 (Ky. 2003) (internal citations omitted). "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." Cantrell Supply, Inc. v. Liberty Mutual Insurance Co. , 94 S.W.3d 381, 385 (Ky. App. 2002) (internal citations omitted).
Exculpatory contracts for exemption from future liability for negligence are "disfavored and are strictly construed against the parties relying upon them." Hargis v. Baize , 168 S.W.3d 36, 47 (Ky. 2005) (internal citations omitted). In order to be valid, "[t]he wording of the release must be so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away; it must be unmistakable." Id. (internal citations and quotation marks omitted). At least one of the following four factors must be present in a valid release:
(1) it explicitly expresses an intention to exonerate by using the word "negligence;" or (2) it clearly and specifically indicates an intent to release a party from liability for a personal injury caused by that party's own conduct; or (3) protection against negligence is the only reasonable construction of the contract language; or (4) the hazard experienced was clearly within the contemplation of the provision.
Id.
When, as in this case, the exculpatory clause is "part of an arm's-length *712 transaction between sophisticated parties with equal bargaining power[,]" Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp. , 238 S.W.3d 644, 650 (Ky. 2007), the clause will be enforced "unless such enforcement violates public policy." Id.
CLK argues that because the clause lacks express references to negligence and indemnity, it does not evidence an intent to release Greenscapes from indemnity claims or liability from personal injury caused by Greenscapes's own conduct. To meet the Hargis standard, CLK argues that the clause should state that Greenscapes will not be liable for slip and fall accidents "caused by its own conduct," rather than what it actually says, "caused by snow, ice or wet conditions." CLK argues that the provision fails because it is susceptible to multiple reasonable interpretations and points out that the trial court previously described the provision as "cryptic."
Even strictly construing the provision against Greenscapes, as mandated in Hargis , 168 S.W.3d at 47, its meaning is sufficiently clear that CLK knew what it was "contracting away." Id. The clause expressly exonerates Greenscapes from all liability except for instances of gross negligence, bad faith and willful misconduct; it clearly indicates an intent to release Greenscapes from the precise personal injury alleged here: a slip and fall accident; it is virtually impossible to construe the clause as intended to do anything other than provide protection for Greenscapes against negligence claims; and finally, the hazard at issue here, the ice and snow, was clearly within the contemplation of the provision because it is specifically mentioned. Thus, the exculpatory clause unmistakably and clearly "set[s] out the negligence for which liability is to be avoided." Id. (citations omitted).
CLK argues that the clause does not protect Greenscapes from indemnification claims because the negligence is being asserted by Hermes, a non-party to the contract. Indemnity is "[a] duty to make good any loss, damage, or liability incurred by another." Frear v. P.T.A. Indus., Inc. , 103 S.W.3d 99, 107 (Ky. 2003) (internal citation omitted). By asking for indemnification, CLK is seeking to hold Greenscapes liable for the damages CLK may incur as a result of Hermes's alleged injuries. This situation is clearly within the plain meaning of the exculpatory clause. The clause does not insulate Greenscapes from direct liability to Hermes, however, because she was not a party to the snow removal contract. As a non-party to the snow removal contract, Hermes was free to seek relief directly from Greenscapes, although she did not name Greenscapes as a defendant.
CLK further argues that its allegation of common law indemnity was sufficient to preclude summary judgment, contending that if Greenscapes did not perform the snow removal properly and thus caused greater risk of harm to Hermes, CLK must prevail on its common law indemnity claim against Greenscapes because any liability on the part of CLK would be secondary to that of Greenscapes, the active and primary tortfeasor. Because of the valid exculpatory clause in the snow removal agreement, however, Greenscapes is protected against a common law indemnity claim.
CLK further contends that the VSA provides the basis for a contractual indemnity claim against Greenscapes. Because it required Greenscapes to name CLK as an additional insured with respect to its general liability policy, CLK contends that the agreement evidences Greenscapes's intent to hold CLK harmless for injuries arising out of Greenscapes's work or operations.
*713 The VSA does not contain any express language imposing a contractual duty on Greenscapes to indemnify CLK for damages resulting from the negligent removal of ice and snow by Greenscapes. CLK, as the drafter of the VSA, was free to include such a provision but failed to do so. By contrast, the snow removal agreement, which was signed at least five years later, does contain specific exculpatory language which meets the Hargis factors and addresses the precise situation at issue here.
CLK argues that even if the exculpatory provision in the snow removal contract is valid, it does not prevent apportionment of fault against Greenscapes if supported by the evidence at trial. At the hearing on CLK's motions on April 3, 2017, it was pointed out that the issue of apportionment was briefed but not addressed in either of the court's orders. The circuit court stated that "if we get to the point of trial, we'll have to figure something out." Counsel for CLK stated that "as long as it's left to trial, I'm fine with that." Thus, the circuit court, with the approval of counsel for CLK, unambiguously reserved its ruling on this issue for a future date. "It is an unvarying rule that a question not raised or adjudicated in the court below cannot be considered when raised for the first time in this court." Fischer v. Fischer , 348 S.W.3d 582, 588 (Ky. 2011) (internal citation omitted). The apportionment argument may not be substantively addressed in this appeal because it was never adjudicated by the circuit court and was in fact expressly reserved for a later resolution.
Finally, CLK argues that the trial court erred in denying its motion for leave to amend its complaint to add Secura, Greenscapes's liability carrier, as a party, and to add claims related to the alleged failure of Greenscapes and Secura to secure CLK as an additional insured pursuant to the VSA. CLK contends that under the terms of the VSA, Greenscapes was contractually required to secure insurance for CLK and Secura was required to accept CLK as an additional insured. As evidence that Greenscapes breached its obligation under the VSA, CLK points to the argument of counsel for Greenscapes at the hearing on the motion for leave to amend, that the amendment would be futile because CLK would not qualify as an additional insured under the policy.
Due to the operation of the liability clause in the snow removal contract, Greenscapes was not liable to indemnify CLK for any acts or omissions alleged in Hermes's complaint. By extension, CLK is similarly not entitled to coverage for these claims as an additional insured under Greenscapes's Secura policy.
For the foregoing reasons, the orders of the Jefferson Circuit Court entered on September 30, 2016, March 7, 2017 and April 6, 2017, are affirmed.
ALL CONCUR.