NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0434n.06

Case No. 20-6014

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Sep 17, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SPRINGSTONE, INC., | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE WESTERN DISTRICT OF |
| HISCOX INSURANCE COMPANY, INC., | ) KENTUCKY |
| | ) |
| Defendant-Appellant. | ) |

BEFORE: SUTTON, Chief Judge; SUHRHEINRICH and SILER, Circuit Judges.

SILER, Circuit Judge. Responding to lawsuits and investigations is expensive (even when they are without merit). That reality played out when Plaintiff Springstone, Inc. incurred substantial legal fees responding to a government subpoena based on a sealed qui tam lawsuit. Springstone thought, however, it was in luck. After all, it had purchased insurance from Defendant Hiscox Insurance Company, Inc. to cover it from certain legal claims. But its coverage does not extend so far. Springstone's policy does not cover qui tam actions filed before the coverage period, nor does it cover subpoena responses. Accordingly, the district court's judgment is AFFIRMED.

I

Springstone (headquartered in Louisville) provides behavioral health services across several facilities. In January 2017, it purchased insurance from Hiscox. That insurance plan

included Directors & Officers (D&O) Liability Coverage.  Only two parts of that coverage are relevant here:

- Coverage B: Company Reimbursement Coverage

  - This D&O Coverage Part shall pay the Loss of a Company arising from a Claim first made against an Individual insured during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of such Individual Insured, but only when and to the extent that such Company has indemnified such Individual Insured for such Loss.

- Coverage C: Company Coverage

  - This D&O Coverage Part shall pay the Loss of a Company arising from a Claim first made against a Company during the Policy Period or the Discovery Period (if applicable) for any actual or alleged Wrongful Act of a Company.

In July 2016, a qui tam lawsuit was filed—under seal—against Springstone.  It alleged that "Springstone had violated the False Claims Act by obtaining reimbursement from Medicare and Medicaid for medically unnecessary services that it provided to patients."  A year after the lawsuit was filed, the Office of the Inspector General for the Department of Health and Human Services sent Springstone a subpoena related to its investigation of the qui tam complaint.  That subpoena requested documents related to Springstone's patient treatment and management practices.

A few months later, Springstone informed Hiscox that it had received the subpoena and sought coverage for its response under the D&O Coverage.  Hiscox denied Springstone's request.  In its response, Hiscox stated that there was no "Claim," and the subpoena did not allege a "Wrongful Act."  A large legal bill ensued.

In 2019, the qui tam lawsuit was dismissed, and the complaint was unsealed.  Springstone informed Hiscox of the lawsuit and again sought coverage for its response.  Hiscox denied that second request for coverage.

Springstone then filed this action against Hiscox in Kentucky state court. Springstone alleged: (1) a breach of contract; (2) common law bad faith; (3) violations of the Kentucky Unfair Claims Settlement Practice Act and Kentucky Consumer Protection Act; and (4) unjust enrichment. Springstone also sought a declaration of rights under the insurance agreement and punitive damages. Hiscox removed to federal court and filed a motion to dismiss. The district court agreed with Hiscox and found that neither Coverage B nor Coverage C covers the costs of responding to the subpoena and that Coverage C specifically excludes non-monetary relief.

## II

We have jurisdiction under 28 U.S.C. § 1291 and review the district court's dismissal of Springstone's complaint de novo. *See Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012). We must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of Springstone, the nonmovant. *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 449 (6th Cir. 2007) (en banc). The parties agree that Kentucky law governs interpretation of the policy's terms. Although Kentucky law requires us to construe contracts liberally and resolve doubts in favor of the insured, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008), contract terms "should be given their plain and ordinary meaning." *Nationwide Mut. Ins. Co. v. Nolan*, 10 S.W.3d 129, 131 (Ky. 1999).

## III

Springstone alleges that the qui tam action and the government subpoena triggered coverage under its D&O Policy. But we must apply the plain meaning of the Policy's terms. And under the plain meaning of the Policy, Hiscox could deny coverage for three reasons. First, the qui tam lawsuit was not filed during the policy period. Second, Springstone failed to indemnify

any individual as required by Coverage B.  Third, non-monetary relief is excluded from Coverage C.  Each rationale is taken in turn.

*Underlying Qui Tam*.  Springstone asserts that the underlying qui tam lawsuit constitutes a Claim under the Policy.  Hiscox is only responsible, however, for losses "arising from a Claim first made . . . during the Policy Period[.]"  And here, the qui tam complaint was filed six months before the Policy Period.  Springstone counters—at least for qui tam actions—that first made does not necessarily mean when the action was first filed.  Because qui tam cases can sit under seal for years, it alleges that first made can mean first unsealed.  *See My Left Foot Children's Therapy, LLC v. Certain Underwriter's at Lloyd's London*, 207 F. Supp. 3d 1168 (D. Nev. 2016).  But Springstone's definition defies the plain meaning of the Policy. The definition of made is the past simple and past participle of make.  Made, *Cambridge Dictionary*.  And make means "to produce something."  Make, *Cambridge Dictionary*.  A lawsuit is first produced or created when it is filed not when it was unsealed.  Springstone's policy reasons for adopting its definition are unavailing. A qui tam action's unique posture does not inherently avoid coverage.  Instead, companies can ensure such coverage by extending its policy's claim discovery period beyond the coverage period. Springstone cannot be insulated because it chose not to do so.

Springstone also points to the Policy's relation back provision, which allows Springstone to notify Hiscox of situations that may give rise to a Claim in the future.  That provision, however, is prospective.  That is, it allows Springstone to notify Hiscox of situations that may give rise to a Claim in the future.  Springstone attempts to flip that provision on its head, allowing it to pull forward a Claim from the past.  That it cannot do.

*Indemnification*.  Coverage B also requires indemnification of an Individual Insured.  And indemnification is "a duty to make good any loss, damage or liability incurred by another." *CLK*

*Multifamily Mgmt., LLC v. Greenscapes Lawn & Landscaping, Inc.*, 563 S.W.3d 706, 712 (Ky. Ct. App. 2018) (quoting *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 107 (Ky. 2003)) (cleaned up). In other words, the Individual Insured must have a duty to pay the loss. *See, e.g., Nassif v. Sunrise Homes, Inc.*, 739 So. 2d 183, 185 (La. 1999) ("Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed.") (citing *Black's Law Dictionary* 769 (6th ed. 1990)); *Beeler v. Martin*, 306 S.W.3d 108, 110 (Mo. Ct. App. 2010) ("Indemnity 'is the shifting of responsibility from the shoulders of one person to another.'") (citation omitted). So, although some Individual Insureds had documents relevant to the subpoena, they did not have any financial obligations related to those requests. Those costs were Springstone's alone. Therefore, Springstone did not indemnify any Individual Insured by retaining counsel to respond to a subpoena directed at the company.

*Exclusion*. Under Coverage C, "[t]he Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured: seeking fines or penalties or non-monetary relief against the Company." Thus, even if the subpoena was a written demand for non-monetary relief, it is excluded from Coverage C. Importantly, the exclusion forecloses payment for any Loss, including Defense Costs. Under these circumstances, Hiscox properly denied coverage.

Resisting this conclusion, Springstone also at times contends that the subpoena was "a civil, criminal, administrative or regulatory investigation of an Individual Insured" rather than a Claim for non-monetary relief against the company. If true, however, that argument runs into a different problem: Such a Claim requires the Individual Insured (i.e., an employee or executive) to be "identified in writing by such investigating authority." The subpoena only identified

Springstone. It did not mention, address, or target any employees or executives at the company. None of Springstone's counterarguments change this outcome.

*Remaining claims.* The district court appropriately dismissed the remaining state law claims because Hiscox was entitled to deny Springstone's insurance claims. *See Ehlschide v. Colonial Life & Acc. Ins. Co.*, 2005 WL 1993534, at *2 (Ky. App. 2005) (quotations omitted) (Bad faith claim requires that "[t]he insurer must be obligated to pay the claim under the terms of policy[.]"); *see also Furlong Dev. Co. LLC v. Georgetown-Scott Cnty. Plan. and Zoning Comm'n*, 504 S.W.3d 34, 39–40 (Ky. 2016) (quotations omitted) (Unjust enrichment is not available "when the terms of an express contract control").

IV

Springstone understandably seeks reimbursement for an expensive investigation. But the insurance it purchased did not cover either the actions of the government or a complaint filed before the Policy Period. AFFIRMED.