RENDERED: DECEMBER 2, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0161-MR

SYLVIA RIEFF                                                          APPELLANT

v.        APPEAL FROM BARREN CIRCUIT COURT
          HONORABLE JOHN T. ALEXANDER, JUDGE
          ACTION NO. 20-CI-00185

JESSE JAMES RIDING STABLES,
INC.                                                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CETRULO, COMBS, AND GOODWINE, JUDGES.

CETRULO, JUDGE: Appellant Sylvia Rieff ("Ms. Rieff") appeals the order of the

Barren Circuit Court granting the motion for summary judgment of the Appellee

Jesse James Riding Stables, Inc. ("JJ Stables").

# I.    FACTUAL AND PROCEDURAL HISTORY

In April 2019, Ms. Rieff and her two children visited JJ Stables and took a guided horseback riding tour.  Before beginning the tour, Ms. Rieff signed the "Horse Rental Agreement and Liability Release Form" (the "Release"), which detailed potential risks of participating in the tour and provided guidance on how to avoid some injuries, *e.g.*, it recommended wearing a helmet and notifying employees of concerns with the saddle.  Further, the Release outlined the participant's assumption of risk and included a liability release for bodily injury and medical expenses, among other things.

The preamble of the Release stated that the agreement was "by and between Sylvia Rieff [who had written her name in the blank space provided] who will sign below for and on behalf of all under-age family members, and those for whom I am guardian, hereinafter referred to as 'I/WE,' and [JJ Stables] . . . ."  Ms. Rieff then wrote each participant's name, which included herself and her two children, in Section I of the Release, titled "Registration of Riders."  That section further stated that "I/WE" included the individuals Ms. Rieff had listed.

Section II, titled "Warnings and Assumption of Risk Agreement," stated, in pertinent part, that

> I/WE understand . . . that there are inherent elements of
> risk always present in any such activity despite all safety
> precautions.  I fully accept such risk, some examples of
> which are listed as follows:  . . . Saddle girths may

naturally loosen during a ride and if a rider notices this he should alert the nearest guide as quickly as possible to avoid any slippage of saddle.

Section III, titled "Release Agreement," detailed the exclusionary provision of the Release and stated, in pertinent part, that

> I/WE understand and agree that except in event of THIS STABLES'S gross negligence, I/WE accept full responsibility for bodily injury, property damage, death, medical and other financial loss expenses to include, but not limited to, time lost from school or work or disability, which are sustained by any member of my group so listed above, on or in relationship to the premises and operations of THIS STABLE and/or while riding or handling horses or other animals owned by same; and that I/WE hereby, for myself, my heirs, administrators and assigns, do hereby release and discharge the owners, operators, sponsors of the premises and their respective servants, agents, officers and all other participants of and from all claims, demands, actions and causes of action for same injuries, damages, and death . . . .

Finally, in Section IV, "Closing Statement and Signatures," the Release stated that "THE UNDERSIGNED HAVE READ AND UNDERSTAND THE FOREGOING AGREEMENT AND RELEASE WAIVER" and provided three lines for signatures: one of which stated it was solely for a rider; the next was for signatures of parents, guardians, and/or spouse #1; and a third line was for signatures of the other parent, guardian, and/or spouse #2. The third line noted that spouses must sign for themselves. Ms. Rieff signed the second line and circled "Parent."

-3-

After completing the paperwork, employees of JJ Stables fit Ms. Rieff and her children for gear and began the tour. Approximately 20 minutes into the tour, as the trail entered the surrounding woods, Ms. Rieff's saddle became loose, and she slid off the side of the horse, falling to the ground. Following the fall, Ms. Rieff testified that her husband took her to a nearby hospital for x-rays and at some point in the days that followed, a doctor determined she had broken four ribs and fractured some vertebrae.

The next year, in March 2020, Ms. Rieff filed a complaint claiming JJ Stables negligently (1) failed to properly secure the saddle, (2) failed to recognize the faulty saddling of the horse, (3) provided unsafe equipment, and (4) failed to properly warn Ms. Rieff of the risk of a loosening saddle. The case proceeded through discovery, and both parties conducted depositions.

In September 2021, JJ Stables moved for summary judgment, claiming, in pertinent part,[1] that Ms. Rieff's claims were barred because she signed the Release, which served as an exculpatory, pre-injury liability waiver. In the circuit court's January 2022 order, it granted the motion for summary judgment of JJ Stables and concluded that "[a]fter a careful review of the [R]elease . . . and

---

[1] JJ Stables also made claims that Kentucky's Farm Animal Activity Act barred Ms. Rieff's action; however, the circuit court did not adjudicate that issue – relying instead on its *Hargis* analysis – and it was not raised on appeal. *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005).

strictly construing it in a light most favorable to [Ms. Rieff], the Court finds that the [R]elease meets . . . the *Hargis* tests"[2] and therefore was enforceable to waive JJ Stables' liability for negligence. Further, the circuit court found that Ms. Rieff was bound by the Release, individually, because the "first line of the release indicates that she is a party, and she testified by deposition that she signed the document. . . . Her signature, combined with her participation on the ride, suffice to establish that she was a party to the release and is bound by it."

Ms. Rieff appealed. She now argues that the circuit court erred when it found (1) the Release was enforceable under *Hargis*; and (2) that she, individually, was bound by the Release.

## II.    STANDARD OF REVIEW

"The standard of review on appeal of a summary judgment is whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR[3] 56.03). Therefore, we "need not defer to the trial court's decision on summary judgment and will review the issue de novo because only legal questions and no factual findings are

---

[2] We discuss the *Hargis* alternatives, detailed in *Hargis v. Baize*, 168 S.W.3d 36 (Ky. 2005), in more detail below.

[3] Kentucky Rule of Civil Procedure.

involved." *CLK Multifamily Mgmt., LLC v. Greenscapes Lawn & Landscaping, Inc.*, 563 S.W.3d 706, 711 (Ky. App. 2018) (citation omitted).

We will review the record "in a light most favorable to the party opposing the motion for summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). Summary judgment "is only proper where the movant shows that the adverse party could not prevail under any circumstances." *Id.* (citation omitted).

Once the moving party meets its burden of showing that no genuine issue of material fact exists, "the burden shifts to the party opposing summary judgment to present 'at least some affirmative evidence showing that there is a genuine issue of material fact for trial.'" *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001) (quoting *Steelvest*, 807 S.W.2d at 482).

Additionally, "[t]he construction and interpretation of a contract, including questions regarding ambiguity, are questions of law to be decided by the court." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 835 (Ky. App. 2000) (citation omitted). Therefore, we must also review questions of ambiguity *de novo*. *Id.*

## III. ANALYSIS

Ms. Rieff argues that the trial court should not have granted summary judgment against her because (A) the Release did not meet any *Hargis* alternative

and, therefore, was not a valid waiver; and (B) the Release was ambiguous;

therefore, it was not enforceable against her, individually.

## A. Validity of the Release

Although "disfavored and . . . strictly construed against the parties

relying upon them[,]" an exculpatory, pre-injury release "for negligence, whether

ordinary or gross, is not invalid per se." *Hargis*, 168 S.W.3d at 47 (citations

omitted). However, the text of the release must be "so clear and understandable

that an ordinarily prudent and knowledgeable party to it will know what he or she

is contracting away; it must be unmistakable." *Id.* (citation omitted).

To assist in this analysis, the Kentucky Supreme Court outlined a

series of alternatives to consider:

> a preinjury release will be upheld only if (1) it explicitly
> expresses an intention to exonerate by using the word
> "negligence;" or (2) it clearly and specifically indicates
> an intent to release a party from liability for a personal
> injury caused by that party's own conduct; or (3)
> protection against negligence is the only reasonable
> construction of the contract language; or (4) the hazard
> experienced was clearly within the contemplation of the
> provision.

*Id.* (citations omitted).

In *Hargis*, the plaintiff was an independent contractor whom the

defendant had hired to haul logs for his lumber yard and sawmill. *Id.* at 39. When

the plaintiff began working for defendant, he signed a release, which stated in

pertinent part that "[i]t is hereby agreed and acknowledged that I am a self-employed independent contractor. . . . I accept responsibility for my own property and person and *release* [defendant], *and forever hold him harmless for any property damage/bodily injury sustained by me or any other person I authorize to be on the working premises while performing services for said contractor*." *Id.* at 46 (emphasis original). Seven months into his work with defendant, a log struck and killed plaintiff while unloading a shipment. *Id.* at 39. Plaintiff's widow then brought suit against defendant, claiming negligence. *Id.*

There, the Kentucky Supreme Court found that such "release" did not "exculpate [defendant] from liability for [plaintiff's] death because [] the 'Release' d[id] not explicitly purport to release [defendant] from liability for his own negligence and d[id] not identify the type of injury or damage for which liability is being released[.]" *Id.* at 47.

Here, Ms. Rieff argues that the Release did not adequately exculpate JJ Stables from liability for her injuries. First, she argues that the Release's use of "except in event of THIS STABLES'S gross negligence" does not establish the express intention to exonerate using the word "negligence." Ms. Rieff contends that although the language of the Release may have *implied* that ordinary – as opposed to gross – negligence was exonerated, it did not meet the standard of "utmost clarity" *Hargis* requires. JJ Stables argues that the use of the phrase

"except in event of THIS STABLES'S gross negligence" indicated that Ms. Rieff agreed to release JJ Stables from all culpable conduct short of gross negligence, *i.e.*, release them from ordinary negligence.

Therefore, we must determine whether the use of "except in event of THIS STABLES'S gross negligence" indicated that the Release pertained to negligence with requisite clarity. In *Hargis*, the Kentucky Supreme Court explained that utmost clarity meant "[t]he wording of the release must be so clear and understandable that an ordinarily prudent and knowledgeable party to it will know what he or she is contracting away[.]" *Hargis*, 168 S.W.3d at 47 (internal quotation marks and citation omitted). JJ Stables argues that the use of "gross negligence" – as opposed to simply "negligence" – delivered the required specificity, and that the ordinary person understands liability would be waived for all conduct short of gross negligence. We agree.

In *CLK Multifamily Management*, 563 S.W.3d at 712, this Court answered a virtually identical question. There, the waiver stated "[defendant] shall only be liable for the gross negligence, bad faith & willful misconduct of [defendant], its agents or employees. [Defendant] will not be liable for any slip and fall accidents caused by snow, ice or wet conditions." *Id.* at 711. There, like here, the plaintiff argued that "because the clause lacks express references to negligence . . . it does not evidence an intent to release [defendant] from . . .

liability from personal injury caused by [defendant's] own conduct." *Id.* at 712.

Further, the plaintiff argued the provision failed under *Hargis*'s first alternative

because it was susceptible to multiple reasonable interpretations, *i.e.*, did not

contain utmost clarity. 563 S.W.3d at 712.

This Court, however, disagreed with the plaintiff's assertions and

concluded that the clause

> [1] expressly exonerates [defendant] from all liability
> except for instances of gross negligence, bad faith and
> willful misconduct; [2] it clearly indicates an intent to
> release [defendant] from the precise personal injury
> alleged here: a slip and fall accident; [3] it is virtually
> impossible to construe the clause as intended to do
> anything other than provide protection for [defendant]
> against negligence claims; and finally, [4] the hazard at
> issue here, the ice and snow, was clearly within the
> contemplation of the provision because it is specifically
> mentioned. Thus, the exculpatory clause unmistakably
> and clearly set[s] out the negligence for which liability is
> to be avoided.

*Id.* (internal quotation marks and citations omitted).

As much as this Court dislikes pre-injury releases, we must adhere to

precedent and come to the same conclusion here. In this case, the Release stated

that

> I/WE understand and agree that except in event of THIS
> STABLES'S gross negligence, I/WE accept full
> responsibility for bodily injury . . . sustained by any
> member of my group . . . on or in relationship to the
> premises and operations of THIS STABLE and/or while
> riding . . . horses . . . and that I/WE hereby, for myself,

-10-

> my heirs, administrators and assigns, do hereby release
> and discharge the owners, operators, sponsors of the
> premises and their respective servants, agents, officers
> and all other participants of and from all claims,
> demands, actions and causes of action for same injuries,
> damages, and death[.]

This provision clearly meets alternatives one, three, and four. Like *CLK*, this provision (1) expressly exonerated JJ Stables from all liability except for instances of gross negligence; (3) made it virtually impossible to construe the clause as intended to do anything other than provide protection for JJ Stables against causes of action for bodily injuries and damages, short of those caused by an agent's gross negligence; and (4) the hazard at issue here – injuries while riding JJ Stables' horses – was clearly within the contemplation of the provision[4] because it is specifically mentioned.[5]

Although the provision did not clearly establish alternative two, the Release need not meet all four alternatives – only one. *Thomas v. Allen*, 650 S.W.3d 303, 308 (Ky. App. 2022) (stating a waiver must satisfy only one of the four *Hargis* alternatives to be legally valid). Thus, because the Release meets alternatives one, three, and four, it is a valid liability waiver under *Hargis*.

---

[4] *See also Thomas v. Allen*, 650 S.W.3d 303, 309 (Ky. App. 2022).

[5] Additionally, the Release also emphasized the possibility of saddles loosening throughout the ride and causing slippage, which was the basis of Ms. Rieff's injuries.

**B.     Release Enforceability Against Ms. Rieff, Individually**

Next, we must determine whether the waiver was enforceable against Ms. Rieff, individually. Ms. Rieff claims that the Release was ambiguous as to whether it intended to bind her in her individual capacity. Specifically, Ms. Rieff takes issue with a sentence fragment in the Release that states "Sylvia Rieff who will sign below for and on behalf of all under-age family members, and those for whom [she is] guardian . . . ." However, we will analyze the full sentence because any portion of a sentence haphazardly selected from a full agreement has the potential to appear ambiguous. The full sentence reads: "By this agreement, made and entered into this day, by and between Sylvia Rieff [who had written her own name on the blank line] who will sign below for and on behalf of all under-age family members, and those for whom I am guardian, hereinafter referred to as 'I/WE,' and [JJ Stables] hereinafter referred to as 'THIS STABLE[.]'"

Therefore, we must determine whether that sentence, in the context of the full Release, was ambiguous. "A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. App. 2002) (citations omitted).

Ms. Rieff claims that the above sentence has two possible interpretations: (1) that she signed the Release only on behalf of her children; and

(2) that she signed it on her own behalf and on behalf of her children. Ms. Rieff further concludes that the first interpretation is the only one the agreement supports because the Release noted that she was signing on behalf of her children but was silent as to whether she was a party to the contract in her individual capacity. We disagree.

The Release contains numerous reminders that the agreement is between Ms. Rieff and JJ Stables and that she is bound by it. First, the very portion Ms. Rieff takes issue with clearly states that the agreement is between her (who would sign on behalf of her underage children) and JJ Stables. Ms. Rieff testified that she wrote her name in the blank space provided in that section. She further testified that right below that recitation, she again wrote her name with her children's names in the portion defining "I/WE, the following listed individuals[.]"

Section III of the Release, the "Release Agreement," further clarifies that

> I/WE accept full responsibility for bodily injury . . .
> sustained by *any member of my group* . . . in relationship
> to the . . . operations of THIS STABLE . . . while
> riding . . . horses . . . [.] I/WE hereby, *for myself*, my
> heirs, administrators and assigns, *do hereby release and
> discharge* the owners, operators, sponsors of the premises
> and their respective servants, agents, officers and all
> other participants of and *from all claims*, demands,
> actions and causes of action *for same injuries*, *damages*,
> and death[.]

(Emphasis added.)

-13-

A subsection later, Ms. Rieff circled the "WE" in "I/WE" and marked the option stating she and her children would wear safety hats, signifying a collective "WE" not an unincluded, "THEY."

Finally, Ms. Rieff testified that she signed the Release on the second signature line (for rider and parent) but understood that "the bottom line was that if you didn't sign the paper, you weren't going to ride the horse." She now argues that by signing on the second line, instead of the first, she was only signing on behalf of her children. However, as mentioned, the third signature line, reserved for Spouse #2, stated that spouses must sign for themselves. If a signature on the parent/guardian line (line two) did not operate as a signature for an adult in their personal capacity, there would be no need for the second spouse to sign separately. The abundance of clear recitations that Ms. Rieff, individually, was a party to the Release and the numerous instances in which Ms. Rieff signed her name as a party to the Release void any possibility of ambiguity as to the Release's enforceability against her.

Additionally, Ms. Rieff fails to provide sufficient evidence from the record to support any of her arguments. The Kentucky Supreme Court "has often stated that speculation and supposition are insufficient to justify a submission of a case to the jury, and that the question should be taken from the jury when the evidence is so unsatisfactory as to require a resort to surmise and speculation."

-14-

*O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006) (internal quotation marks and citation omitted). Further, "[t]he party opposing summary judgment cannot rely on their own claims or arguments without significant evidence in order to prevent a summary judgment." *Wymer v. JH Properties, Inc.*, 50 S.W.3d 195, 199 (Ky. 2001) (citation omitted).

Here, Ms. Rieff testified that she signed the Release, but offered no other explanation during her deposition. She did not assert that although she signed it, she did not sign it on her own behalf, or that she signed it only for her children. Now, failing to cite to affirmative evidence in the record, she claims she was not actually a party to the Release. Instead, she relies on her beliefs regarding a 22-word sliver of the Release to establish ambiguity. That is not enough; belief alone is insufficient. *O'Bryan*, 202 S.W.3d at 588 (citation omitted). As such, we find the Release had only one realistic interpretation – that it bound Ms. Rieff, individually – and therefore, it was not ambiguous.

## IV.   CONCLUSION

The Release meets not just one, but three of the four *Hargis* alternatives; therefore, it is a valid pre-injury release. Additionally, the Release is enforceable against Ms. Rieff, individually. Therefore, there is no genuine issue of material fact and summary judgment was appropriate. We AFFIRM the order of the Barren Circuit Court.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron M. Williams
Louisville, Kentucky

BRIEF FOR APPELLEE:

Steven B. Lowery
Louisville, Kentucky